## CHARLES P. CALDWELL, SURVIVING TRUSTEE, *vs.* ELIZA J. GRAHAM.

*Trustees; joint responsibility; neglect of one to act; liability for moneys received.*

It is optional with one who is made trustee to accept or decline, but, having undertaken the duty, it is not competent for him to limit his obligation or divest himself of any part of his fiduciary discretion.                                    p. 127

The estrangement of the trustee from the beneficiary can only be pertinent as an inducement for refusing to assume the trusteeship; it is not a material consideration in defining his responsibility when the trust has been actually accepted.

p. 127

Where a testator conveys a trust upon the executors named "and the survivor of them," it is to be understood that he reposed in them a discretion to be duly exercised so long as they should both continue to act.                                    p. 127

A provision in a will holding the trustees responsible only to the extent of the money actually received, was held from the context to refer only to a possible depreciation in the value of property which the testator directed should be held until

it could be sold to advantage; and did not mean each of the trustees should be relieved of all liability as to any portion of the estate he might find it convenient to surrender to the sole custody of his associate.                                    p. 128

As a general rule a trustee is responsible only for his own acts or defaults, but if by any affirmative conduct or any omission of duty, though innocently, a breach of trust occurs which due attention to his duty would have prevented, he is liable for the resulting loss.                                    p. 128

Such a liability exists where for any positive act, direction or agreement of one joint executor, guardian, or trustee, the trust money is paid over and comes into the hands of the other, when it might and should have been otherwise controlled or secured by both.                                    p. 128

*Decided February 23rd, 1911.*

Appeal from Circuit Court for Cecil County, sitting in Equity (PEARCE, C. J., and HOPPER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, SCHMUCKER, THOMAS, PATTISON and URNER, JJ.

*Frederick T. Haines,* for the appellant.

*Albert Constable* and *J. J. Archer,* for the appellee.

URNER, J., delivered the opinion of the Court.

This is an appeal by a surviving trustee from an order overruling his exceptions to an auditor's account charging him for misappropriation of trust funds by his co-trustee. The trust was created by the will of James T. Graham, of Cecil County, who died in the year 1896. The testator devised and bequeathed his residuary estate to his executors, John S. Wirt and Charles C. Caldwell, in trust for the benefit of his mother, Eliza J. Graham, for life, with remainder

to his brother and sisters or their issue, the share of the brother to be held in further trust for his benefit for life and to be distributed to his surviving children after his death. By their second account, filed on May 11th, 1898, the executors charged themselves with a balance of $11,909.98. This represented all the personalty belonging to the trust and included shares of stock in various corporations, mortgages taken as investments after the testator's death, and cash. There was some real estate embraced in the trust consisting of three small houses and lots and one unimproved lot in the village of Perryville.

At the time of the filing of their second account in the Orphans' Court the executors, in the capacity and designation of trustees, also stated in the same Court their first account of the income derived from the trust estate. This was followed by successive annual accounts of like character until the death of Mr. Wirt in 1904. It was then discovered that he had converted to his own use a considerable part of the trust funds, and that investments mentioned in the income accounts as outstanding had been collected and the proceeds misappropriated. The net amount of the deficiency thus produced, after crediting a dividend from the insolvent estate of the deceased trustee, was eventually ascertained to be $4,109.71, and for this the surviving trustee was held personally liable by the Court below upon the ground that his conduct, while above reproach so far as his integrity was concerned, had been such as to facilitate the *devastavit* by his co-trustee.

It appears from the testimony of the appellant that at the inception of the trust he entered into an arrangement with his associate, Mr. Wirt, by which the latter was to have exclusive management of the personal estate, while the appellant was to have charge of the real property; that he accordingly left the entire administration of the personalty to his co-trustee and took no part in the duties of the trust except as to the renting and repair of the three houses belonging to the estate and the collection of income from that source, which

he regularly remitted to Mr. Wirt; that he permittted his co-trustee to make investments upon his sole discretion, never asked to see any of the securities and did not know whether any were taken; that Mr. Wirt sent him at his request in 1901 a statement purporting to show investments of the personal estate, but he made no further inquiry after that time; that he joined in releasing mortgages, but did not receive any of the money repaid, and knew nothing about its further disposition; that the bank account of the trust was kept in the name of Mr. Wirt as executor and was checked on by him exclusively, this being done by virtue of a written authorization from the appellant addressed to the bank; that he never examined the bank account or the checks drawn upon it, or the income accounts filed by Mr. Wirt in the Orphans' Court in the joint names of the trustees, and that if he had inspected the latter accounts, he would have observed discrepancies which would have caused him to believe that the estate was being improperly administered. He testified that there was no loss, to his knowledge, from unsuitable investments, but that the amount represented by the deficiency was squandered by his co-trustee. He also stated that he received commissions on the income from the whole estate, except the receipts indicated in the trustee's fifth account. His candor with respect to his attitude towards the trust is illustrated by the following quotation from his cross-examination: "Q. And I understand from you that you didn't have any hand in squandering it, but could, by the exercise of reasonable care in looking after the personal estate, have ascertained and prevented this loss. That is correct, is it? A. Yes; that is correct."

The appellant contends, however, that under the circumstances of the case "he is not liable," to use the language of his brief, "for the acts of his co-trustee, particularly in view of the fact that he acted with perfect good faith, without any connivance in or knowledge of the wrong-doing of his co-trustee, and in strict conformity with what he conscientiously believed to be his strict duty under the will."

He testified that because of strained relations between the beneficiaries and himself he thought of resigning as one of the executors, but Mr. Wirt requested him to act, and he consented to do so with the understanding already stated as to the division of duties. He had no communication on this subject with any of the persons interested under the will. He felt justified in reposing implicit confidence in his co-trustee because of the high respect in which the latter was held as a lawyer of ability and integrity down to the time of his death. It was urged by the appellant that the allotment to Mr. Wirt of the exclusive administration of the personal assets of the trust was natural and proper on account of his business experience, and that the appellant was not required to deal with his associate as an object of suspicion and to assume that he would misapply the funds committed to his care. It was claimed that a provision in the will conferring upon the "executors or the survivor of them" the right "generally to do all things necessary to the proper management" of the estate authorized the trustees to make the arrangement in question. Attention was also called to another provision that the "executors and the survivor of them shall not be held responsible for the depreciation of any property so held by them in accordance with my directions, it being my intention that my said executors, or the survivor of them, shall only be responsible for such money as they shall actually receive by virtue of the trust hereby reposed in them;" and it was argued that this indicated a design that each of the trustees should be liable only for his own dereliction. The appellant, therefore, insists that having properly performed the duty of managing the realty, as imposed upon him in the division of the administration of the trust, he should not be held accountable for a default with respect to a portion of the estate of which his associate had complete and separate control.

We have no doubt as to the appellant's good faith in his conduct towards the trust, but we must concur in the conclusion of the learned Court below that his defense is not

sufficient to exempt him from the liability with which he is charged in this case. It is apparent from his own showing that he voluntarily relinquished to his co-trustee the custody of all the assets of the estate that were at all suscepible of misappropriation. While accepting the joint trust created by the will the appellant, by his affirmative act, invested his associate exclusively with a power of control the testator intended should be exercised by both the fiduciaries he appointed. It was in evidence that the appellant was a man of practical business experience, a cousin of the testator, and the head of a corporate enterprise with which the latter was officially connected. It appeared also that the appellant received $4,000.00 from two life insurance policies transferred to him by the testator shortly before his death. The relations between these two individuals are thus shown to have been of an intimate and confidential character, and they are sufficient to account for the appellant's selection as a trustee. It was optional with him to accept or decline the trust, but, having undertaken the duty imposed by the will, it was not competent for him to limit his obligation or divest himself of any part of his fiduciary discretion. The estrangement of the appellant from the beneficiaries would only have been pertinent as an inducement for refusing to assume the trusteeship. It certainly could not be a material consideration in defining his responsibility when the trust had been actually accepted. As this circumstance did not interfere with his administration of the real estate of the trust, we are unable to understand how it could embarrass his participation in the management of the personalty.

There is nothing in the will to sustain the contention that an apportionment of the duties of the trust was intended to be authorized. On the contrary, it is clear that the testator, in conferring the trust upon the executors named "and the survivor of them," understood that he was reposing in them a discretion to be jointly exercised so long as they should both continue in the trust. The provision quoted as to the trustees being held responsible only to the extent of the

money actually received is plainly shown by the context to refer only to a possible depreciation in the value of property which the testator directed should be held until it could be sold to advantage. It cannot be construed to mean that each of the trustees should be relieved of all liability as to any portion of the estate he might find it convenient to surrender to the sole custody of his associate.

As a general rule, a trustee is responsible only for his own acts or defaults, but if by any affirmative conduct or any omission of duty he facilitates, though innocently, a breach of trust, which a due attention to his duty would have prevented, he is liable for the resulting loss to the beneficiaries whose interests were confided to his protection. 2 *Pomeroy Eq. Jur.,* section 1082. It is well settled that such a liability exists where "by any positive act, direction or agreement of one joint executor, guardian or trustee, the trust money is paid over and comes into the hands of the other when it might and should have been otherwise controlled or secured by both," as "if it is mutually agreed between them that one shall have the exclusive management of one part of the trust property and the other of the other part;" 2 *Story's Eq. Jur.,* 13th Ed., section 1284; or if one of the trustees permits the trust funds to be deposited in bank to the sole credit of his co-trustee. 1 *Perry on Trusts,* 3rd Ed., section 419.

It was held in *Maccubbin* v. *Cromwell,* 7 G. & J. 157, that where one trustee delegates to another important duties of the trust, and under such circumstances funds have been wasted, he is liable to account to th parties injured.

The rule was stated in *Ringgold* v. *Ringgold,* 1 H. & G. 49, as follows: "If, therefore, a trustee or executor, by any act, omission, supine negligence or undue confidence abandons any portion of the fiduciary estate to his companion, so as to tend to its jeopardy or final loss, this *per se* is a breach of trust and subjects such trustee or executor to all losses consequent on such *crassa negligentia,* without any regard to acts of direct co-operation, such as receipts, conveyances, etc."

In *Glenn* v. *McKim,* 3 Gill, 386, the Court observed: "It has been said (and in many cases of trust it should be remembered) that co-trustees are bound to watch the conduct of each other; and in a former case in this Court it was stated to be the received doctrine that if the trustee 'who wasted the estate was in any degree facilitated therein by the acts and omissions of the other, they are both equally liable.'" (*Ringgold* v. *Ringgold, supra.*) To the same general effect is the case of *Latrobe* v. *Tiernan,* 2 Md. Ch. 475.

The principle applied in the cases already cited was recognized also in the case of *Barroll* v. *Forman,* 88 Md. 199, where it was said, that "one trustee may so commit the execution of the trust to his co-trustee, or so ratify his acts, as to make him responsible to third parties for the defalcation of the latter."

In the case before us the confidence of the testator and the duties of the trust were reposed in two trustees, whose joint administration was contemplated as desirable for the due management and protection of the estate. In accepting the appointment the trustees assumed the joint and equal obligation of exercising their discretion and control with respect to the trust in its entirety. The arrangement which they effected, for their individual convenience, to divide and separate their functions, was essentially different from the policy of united action indicated in the will by which they were to be governed. If the testator had desired to commit the personalty to one trustee and the realty to the other, he would have doubtless so provided. When the appellant surrendered to the absolute control of his co-trustee the personal assets of the estate, he created an opportunity for misappropriation which would not have existed if the obvious purpose of the will had been observed. When he authorized the deposit and disbursement of the trust money by his associate alone, there was nothing further that could be done to facilitate any wrongful disposition which the latter might wish to make of the funds. It is evident that this is not a case of mere passive omission to exercise proper care and vigilance,

but it is a case of affirmative action, induced by undue confidence, making possible and easy a defalcation by the co-trustee.   The liability of the appellant is therefore fully established upon the well-settled principles to which we have referred.   In accordance with this conclusion the order of the Court below will be affirmed.

*Order affirmed, with costs.*