# Wytheville

FIRST AND MERCHANTS NATIONAL BANK OF RICHMOND, ETC.
v. BANK OF WAVERLY.

June 8, 1938.

Present, All the Justices.

The opinion states the case.

*M. F. Partridge* and *William Old,* for the plaintiffs in error.

*Robert W. Arnold* and *George E. Allen,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

This action was instituted by the First and Merchants National Bank, substituted testamentary trustee of the estate of George T. Partridge, Sr., and Johnetta B. Partridge, in her own right and as the next friend of George T. Partridge, Jr., infant, against the Bank of Waverly to recover the sum of $2,564.73, the amount of the loss to the estate for the alleged failure of the Bank of Waverly, through its negligence, to properly perform its duties as co-executor and co-trustee of the estate of George T. Partridge, Sr.

Defendant filed a plea alleging that the parties plaintiff had, in consideration of the payment of one-half the losses to the estate, released the Union Trust and Mortgage Company, the other acting co-executor and co-trustee, and that the release and discharge of said co-executor and co-trustee operated as a release and discharge of defendant. The trial court, to which the issues were submitted without a jury, sustained the plea and dismissed the action. From that judgment this writ of error was allowed.

The facts material to the questions presented may be stated thus: On October 8, 1926, the Bank of Waverly and the Union Trust and Mortgage Company, in the Circuit Court of Sussex county, qualified as executors and trustees of the estate of George T. Partridge. Some time thereafter the Union Trust and Mortgage Company, as trustee and with trust funds, purchased from itself certain notes secured by deeds of trust on real estate. The notes were not paid at maturity and were not reduced to judgment within five years from their due dates. On October 23, 1928, the Union Trust and Mortgage Company was declared insolvent, and Bernard C. Syme was appointed receiver. The First National Bank and Trust Company of Petersburg was appointed administrator d. b. n. c. t. a., and trustee of the Partridge estate in the place and stead of the Union Trust and Mortgage Company. The First National Bank and Trust Company of Petersburg was not permitted to reopen after the national banking holiday, and the Comptroller

of the Currency appointed W. Hal Payne as a conservator of this bank.

The results of these transactions were that in 1933, the Bank of Waverly and W. Hal Payne, conservator of the National Bank and Trust Company of Petersburg, were acting in their fiduciary capacities on the Partridge estate; and Bernard C. Syme, as receiver of the Union Trust and Mortgage Company, was administering its affairs under the direction of the Hustings Court of the city of Petersburg in a suit instituted by the State Corporation Commission against Union Trust and Mortgage Company. The parties interested in the Partridge estate ascertained that they had suffered a substantial loss by the failure of the Union Trust and Mortgage Company, one of the executors, to faithfully perform and discharge duties owing to them. On October 17, 1933, they and others interested filed a petition in the suit pending in the Hustings Court of the city of Petersburg against the Union Trust and Mortgage Company.

This petition contains seven printed pages alleging in detail transactions whereby the Union Trust and Mortgage Company had used funds of the Partridge estate to purchase from itself numerous notes owned by it. One of the averments of that petition is as follows:

"Your petitioners aver that the said Union Trust & Mortgage Company transferred the hereinbefore described notes or bonds from itself to the Estate of the said G. T. Partridge, deceased, when the said Union Trust & Mortgage Company was co-executor and co-trustee of the said estate, without the knowledge or consent of your petitioners, or any of them; that no proper *appraisement* has been made of the real estate upon which the said notes or bonds were supposed to be a first lien; that the said notes or bonds were not a proper investment for trust funds as provided by law; that your petitioners are informed, believe, and therefore, aver that the said transfer of the trust funds from the Estate of the said G. T. Partridge, deceased, did not serve to give the Union Trust & Mortgage Company title to the said funds; that the said Union Trust & Mortgage Com-

pany held the same as co-executor and co-trustee of the said estate for the benefit of the legatees and devisees under the said will of the said G. T. Partridge, deceased, and that the said funds came into the hands of the receiver of the Union Trust & Mortgage Company impressed with this trust, and that he (the receiver) now holds the said funds as trustee for the benefit of your petitioners."

To this petition Bernard C. Syme, as receiver, filed an answer denying any liability to the Partridge estate for any loss the estate may have sustained.

The issues raised by the petition, and answer filed by the receiver, were settled by the receiver agreeing to pay to the Partridge estate one-half the total loss, which settlement was approved by the court, as appears from the following excerpt from the decree:

"And it further appearing to the court on the statement of counsel at the bar of the court that the parties hereto, subject to the approval of the court, have agreed upon a settlement of the matters in controversy in this suit on the basis of the payment to the administrator and executor as aforesaid of the estate of G. T. Partridge, by the receiver of the Union Trust & Mortgage Company of one-half of any loss suffered by the estate of G. T. Partridge, as and when such loss shall be determined, by reason of its ownership of the said notes, and the court being of the opinion that said compromise settlement is fair, just and equitable, it is accordingly adjudged, ordered and decreed that said settlement be, and the same is, hereby confirmed, but without passing on any of the questions of law involved in this suit, and the receiver of the Union Trust & Mortgage Company is hereby decreed to be indebted to the said administrator and executor of the estate of G. T. Partridge, as and when the same shall have been ascertained, in a sum equal to fifty per cent of all loss sustained by the estate of G. T. Partridge, by reason of its ownership of the aforesaid notes. * * *

"And it is further adjudged, ordered and decreed that the claim of the administrator and executor as aforesaid

of the estate of G. T. Partridge against the receiver of the Union Trust & Mortgage Company, by virtue of this decree, be, and the same is, hereby made a preferred claim against all of the assets in the hands of the said receiver of the Union Trust & Mortgage Company."

The defendant contends that the release of the Union Trust and Mortgage Company, its former co-executor and co-trustee, under the circumstances stated, operated as a legal exoneration of it from all liability for the losses to the beneficiaries.

This contention is made on the theory that a release of one joint tort-feasor operates as a release of all others jointly liable for the same injury. This principle was applied by this court in two recent cases. *McLaughlin* v. *Siegel,* 166 Va. 374, 185 S. E. 873, and *Bland* v. *Warwickshire Corporation,* 160 Va. 131, 168 S. E. 443.

In Restatement of The Law, Trusts, section 258, the rule as to the liability of trustees is stated thus:

"a. *Trustees jointly and severally liable.* Where several trustees are liable for a breach of trust committed by them jointly or for a breach of trust committed by one of them for which the others are liable under the rule stated in section 224, they are jointly and severally liable to the beneficiary for the breach of trust."

At section 224 of the same work it is held that a trustee is liable to the beneficiary for a breach of trust committed by his co-trustee if he "(a) participates in a breach of trust committed by his co-trustee; or (b) improperly delegates the administration of the trust to his co-trustee; or (c) approves or acquiesces in or conceals a breach of trust committed by his co-trustee; or (d) by his failure to exercise reasonable care in the administration of the trust has enabled his co-trustee to commit a breach of trust; or (e) neglects to take proper steps to compel his co-trustee to redress a breach of trust."

In the present case the Bank of Waverly and the Union Trust and Mortgage Company were jointly and

severally liable to the beneficiaries of the Partridge estate for the loss occasioned by their negligence.

Regardless of the contrary views expressed by the courts of other States (*Young* v. *Anderson,* 33 Idaho 522, 196 P. 193, 50 A. L. R. 1057), in Virginia we are definitely committed to the view that the release of one joint tort-feasor releases the others jointly liable for the same wrong or injury. Burks' Pleading and Practice (3d. Ed.), pages 5 and 6; *Ruble* v. *Turner,* 2 Hen. & M. (12 Va.) 38; *Wilkes* v. *Jackson,* 2 Hen. & M. (12 Va.) 355; *Wells* v. *Jackson,* 3 Munf. (17 Va.) 458; *Brown's Adm'r* v. *Johnson,* 13 Gratt. (54 Va.) 644; *Petticolas* v. *City of Richmond,* 95 Va. 456, 28 S. E. 566, 64 Am. St. Rep. 811; *Bland* v. *Warwickshire Corporation, supra;* and *McLaughlin* v. *Siegel, supra.*

Mr. Justice Hudgins, speaking for the court in *McLaughlin* v. *Siegel, supra,* said (166 Va. 377, 378, 185 S. E. page 874) : "It is not the relationship of the several wrongdoers among themselves, which is the foundation for the rule that a release of one wrongdoer releases all others from liability for the same wrong, it is the fact that the injured party is entitled to but one satisfaction for the same cause of action. It is well settled in this jurisdiction that a release of one jointly liable for a wrong will operate as a release of all other wrongdoers liable for the same injury. This is true even if the release itself contains a statement reserving the right of action against other wrongdoers. *Bland* v. *Warwickshire Corporation,* 160 Va. 131, 135, 168 S. E. 443, 444."

The justice continues with a reference to *Fitzgerald* v. *Campbell,* 131 Va. 486, 109 S. E. 308, 27 A. L. R. 799. "In a note to this case in 27 A. L. R. 806, this is said: 'The general theory expressed in the foregoing cases finds support in a practically uniform line of authorities holding that the acceptance of satisfaction of a judgment against one of two or more joint tort-feasors is a bar to any further proceedings against the other tort-feasors, except for costs.' See *Berkley* v. *Wilson,* 87 Md. 219, 39 A. 502; *Adams* v. *Southern Pacific Co.,* 204 Cal. 63, 266 P. 541, 57 A. L. R. 1066; and note, 65 A. L. R. 1091. The question of costs was

not raised in the lower court nor alluded to in the argument before this court.

" 'His acceptance of satisfaction of the judgment recovered has the same effect as a release. It extinguishes his cause of action against other tort-feasors liable for the same injury and bars action against them. * * * This is true, though the wrongdoers are severally, rather than jointly, liable for the injury. *Cleveland* v. *Bangor,* 87 Me. 259, 264, 265, 32 A. 892, 47 Am. St. Rep. 326.' *Wells* v. *Gould et al.,* 131 Me. 192, 160 A. 30, 31."

That the present action is one of tort can not be questioned. The notice of motion filed in the case is grounded upon the negligence of the defendant. There was but one single cause of action and it grew out of the wrongful conduct of the co-trustees. While the co-trustees are jointly and severally liable in tort for the injury caused by their negligence or misconduct, the satisfaction of the cause of action made by one for the mischief wrought discharges the other. It is similar in its operation to an accord and satisfaction. This is true, even though the parties did not intend to discharge the other joint wrongdoer. *Bland* v. *Warwickshire Corporation, supra.*

The plea in this case sets up a complete satisfaction of the single wrong charged to have been committed. The evidence clearly sustains the averments of the plea. When the general rule is applied, the plaintiff has no case, and that is what the trial court held.

The rule of law, so well established in Virginia by the cases referred to, is subject to no known exceptions. The fact that the wrong grows out of the misconduct of co-trustees constitutes no exception to the rule of which we are aware. These fiduciary wrongdoers are just as much joint wrongdoers as any other joint tort-feasors. There is just one cause of action against them. When one of them satisfied that single cause of action the other was released. There can be no bar until there has been satisfaction for the wrong done (Code, section 6264) but when once the wrong has

been satisfied by one, that constitutes a complete bar to any action that may be instituted against the other.

This same rule was formerly applied to the liability of joint obligors. A release of one operated to release all, but by statute the rule was changed in Virginia (Code, section 5763). The very fact that the General Assembly in its wisdom changed the general rule respecting joint obligors and left unimpaired the rule respecting joint wrongdoers is very persuasive that it is satisfied with and approves the rule of law applicable to the latter class.

Our conclusion is that the decree against the receivers of the Union Trust and Mortgage Company entered by the Hustings Court of Petersburg for one-half of the losses sustained as a result of the wrongful conduct of the co-trustees and the acceptance and satisfaction thereof by the beneficiaries of the Partridge estate operates as a bar to the present action against the Bank of Waverly for the other one-half of the losses. The release of the Union Trust and Mortgage Company, one of the co-trustees, from the cause of action for the wrongful conduct of the co-trustees, released the Bank of Waverly, the other co-trustee.

The judgment is affirmed.

*Affirmed.*

HUDGINS, J., dissenting.

The effect of a release by the beneficiary of one of two trustees for the loss of trust funds has not been considered by this court prior to this case. Consideration of the question, as applied to this class of persons jointly liable, should be determined on its merits, uninfluenced by the harsh rules of the common law applicable to ordinary joint tort-feasors.

In *Bland* v. *Warwickshire Corporation*, 160 Va. 131, 136, 168 S. E. 443, we examined prior decisions of this court declaring the effect of a release of one of two or more ordinary tort-feasors and, without enlarging upon the previous discussion of the rule, held, in effect, that we were bound thereby. In the concluding paragraph of that opinion we said (page 444): "There is much conflict of authority on

this point in other States (see note, 50 A. L. R. 1057; Cooley on Torts (Students' Ed.) section 43; 6 Thompson on Neg., section 7381; Burks' Pl. & Pr. (2d Ed.) p. 6); but after a careful review of the question the court is of opinion that the doctrine laid down in *Ruble* v. *Turner, supra,* should be adhered to."

In the light of the decision in that case, and the prior decisions of the court, I think the excerpts quoted in the majority opinion correctly state the law applicable to the class of tort-feasors then before the court, but I do not think the same rule should be applied to the release of one of two fiduciaries for the loss of trust funds.

The principles of law controlling the relation of the parties are different. The fiduciary relation to the *cestui que trust* is voluntarily assumed, and assumed, as in this case, for a consideration to be paid out of the trust estate. In construing a release of an ordinary tort-feasor by the party who has suffered loss, the courts apply the rules of construction governing a simple contract between parties dealing at arm's length. These rules of construction do not apply to a release of the fiduciary executed by a ward or other *cestui que trust.* The general rules applicable to the latter class of releases are stated in Perry on Trusts and Trustees (7th Ed.), vol. 2, pp. 1452, 1453, thus:

" * * * nor can any acquiescence be inferred until the *cestui que trust* has actual knowledge of the breach, for the reason that it is the duty of the trustee to execute the trust, and it is not the duty of the *cestui que trust* to make any inquiries. So if the *cestui que trust* gets what he can from the wreck after a breach of the trust, and receives a part of what he is entitled to, he does not thereby waive his right to sue for the whole, when he can obtain it. * * *

"So it is said that the *cestui que trust* may for a good consideration waive a breach of the trust. But all agreements or contracts between trustee and *cestui que trust* are looked upon with suspicion by the court, and are closely scrutinized; therefore, in order that the release, confirmation, waiver, or acquiescence may have any effect, the

*cestui que trust* must have full knowledge of all the facts and circumstances of the case. The *cestui que trust* must also know the law, and what his rights are, and how they would be dealt with by the court. * * * The *cestui que trust* must be *sui juris,* as an infant cannot be bound by a release or other act; and if the *cestui que trust* has just come of age he ought to have proper legal advice."

In *Waller* v. *Armistead's Adm'rs,* 2 Leigh (29 Va.) 11, 21 Am. Dec. 594, this is said: "We think therefore that an acquittance or release given shortly after a ward comes of age, or before or at the time of giving up the estate, so far as it may be sought to be used, either as evidence of a fair settlement or a discharge from the obligation of making such a settlement, stands on the same footing as a direct gift or gratuity. But in addition to the great principle of public policy, the acquittance, in this case, stands reprobated by all the circumstances of fraud, which we have already mentioned as attaching to the deed of gift."

These principles, applicable to contracts between a party who occupies the relation of trust and confidence to another, and such other, are restated and applied in *Stiers* v. *Hall, post* page 569, 197 S. E. 450 (opinion by Mr. Justice Holt announced at this term of court).

If a *cestui que trust* is thus protected in executing a release directly to his trustee, it would seem to be illogical not to extend him the same protection and give him the same rights against a solvent trustee, where, without full knowledge of all the facts, or his legal rights, he had acquiesced in the release of the insolvent trustee in consideration of payment of part only of the loss sustained.

A co-trustee ordinarily is not liable for the loss of trust funds in the hands of the other trustees. Such a trustee is liable only in the event that his own breach of duty to the trust estate results in loss. "As a general rule a trustee is responsible only for his own acts or defaults; but if, by any affirmative conduct or any omission of duty, he facilitates, though innocently, a breach of trust, which a due attention to his duty would have prevented, he is liable for the result-

ing loss to the beneficiaries whose interests were confided to his protection." *Caldwell* v. *Graham,* 115 Md. 122, 80 A. 839, 841, 38 L. R. A. (N. S.) 1029. See 26 R. C. L., section 198; 83 A. L. R. 625.

The two trustees in this case qualified on the estate in October, 1926. Some time prior to October, 1933, the Bank of Waverly ascertained that its co-trustee had purchased securities from itself with trust funds, and that the value of these securities had so depreciated that they would be a substantial loss to the estate. Thereupon the Bank of Waverly, in the performance of its duty as a fiduciary, together with others, instituted a suit against its co-trustee to recover the amount of the loss. In that suit the solvent trustee, the Bank of Waverly, by agreement accepted a judgment in its own name against the insolvent trustee for one-half the loss.

The action in this case was instituted by the beneficiaries and another trustee, against the Bank of Waverly to recover the balance of the loss to the estate, and is based not on the ground that the Bank of Waverly used trust funds to purchase securities from itself, but on the ground that the Bank of Waverly was negligent in failing to ascertain, in time to prevent a loss, that its co-trustee had made an illegal use of trust funds. As a bar to recovery for its own act of negligence, the Bank of Waverly pleads its own contract in making a settlement with its co-trustee, who was then insolvent.

The Bank of Waverly attempts to evade the force and effect of its own act in making the compromise, by contending that it did not authorize the suit to be instituted against the insolvent trustee. Parol testimony was introduced for the purpose of proving this assertion. The Bank of Waverly introduced, as evidence, pertinent pleadings and decrees in the former suit, for the purpose of establishing, by the record, that the Union Trust and Mortgage Company had been released of its liability to the Partridge estate, and by that record defendant is bound. Defendant can not claim that so much of that record that shows release of the in-

solvent trustee is correct, and that so much of it that shows that defendant participated in the compromise settlement is erroneous. The complete answer to this contention is, "that a record imports such absolute verity that no person against whom it is pronounced shall be permitted to aver anything against it. In 1st Inst. 260, Lord Coke says, the rolls being the memorials of the judges, import in themselves such absolute verity as they admit of no averment to the contrary. And if such a record be alleged, and it be pleaded there is no such record, it shall be tried only by itself." *Quinn* v. *Commonwealth*, 20 Gratt. (61 Va.) 138; *State* v. *Vest*, 21 W. Va. 796, 800; *Walker* v. *Commonwealth*, 144 Va. 648, 131 S. E. 230.

However, if it were not estopped to deny its participation in the former suit, the Bank of Waverly was negligent in a failure to begin the suit after it ascertained the breach of duty by its co-trustee. So, in any event, this action is based upon the failure of the Bank of Waverly to perform its duty to the beneficiaries, independent of the breach of the same duty owing to the beneficiaries by its co-trustee.

Where two trustees are liable to the beneficiary for a breach of trust, and one is more at fault than the other, and the one least at fault makes redress, he is entitled to contribution, and may be entitled to indemnity from the other (A. L. I. Trusts, sec. 258). But where the trustee entitled to contribution obtains or participates in a compromise settlement whereby the defaulting trustee is released, he should not be permitted to plead such a release in an action against him for his own neglect of duty, unless it appears that the beneficiary was fully informed of all the facts, and of his legal rights and, after obtaining this information, he accepted the settlement as a complete discharge of all liability for the breach of duty.

For these reasons I am constrained to dissent from the conclusions stated in the majority opinion.