**Charles L. PERDUE, Jr., Administrator of the Estate of Kevin Barry Perdue, deceased, Plaintiff,**

v.

**SEARS, ROEBUCK & COMPANY, Defendant.**

**Civ. A. No. 80–0078–C.**

United States District Court, W. D. Virginia, Charlottesville Division.

Sept. 16, 1981.

F. Guthrie Gordon, III, Charlottesville, Va., for plaintiff.

James C. Shannon, Richmond, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This case is before the court upon defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure Number 56. On August 7, 1981, this court heard oral arguments on this motion for summary judgment and granted the parties ten (10) days in which to file any supplemental documents. That time having now expired, the court is prepared to render its decision.

The facts in this case are simple and undisputed. The plaintiff is the Administrator of the Estate of Kevin Barry Perdue. On December 3, 1979, Kevin Perdue was a passenger in an automobile driven by Terrence Cherry. While Kevin Perdue was a passenger, Cherry attempted to negotiate a curve and lost control of the car. As a result, the car went off the road, collided with the neighboring trees, and was wrecked. Kevin Perdue was declared dead at the scene of the accident and an autopsy revealed that his death was caused by multiple internal injuries. At the time of the accident, Cherry's car was equipped with three radial tires and the fourth tire, mounted on the rear axle, was a bias-ply tire. The three radial tires were purchased from the defendant, Sears, Roebuck & Co., and the bias-ply tire had come with the car.

On February 14, 1980, plaintiff filed suit against Cherry, the driver of the car, in the Circuit Court of Albemarle County. *Perdue v. Cherry*, Law No. 1535. In the state court suit, plaintiff alleged that Cherry was guilty of various acts of negligence and that decedent's wrongful death was a direct and proximate result of Cherry's negligence. One of plaintiff's allegations was

that the vehicle Cherry was driving was defective and unsafe in that one rear tire was a radial tire and the other rear tire was a bias-ply tire. On June 25, 1980, the parties in *Perdue v. Cherry* entered into a settlement agreement whereby Cherry would pay to the plaintiff Forty thousand and no/100ths Dollars ($40,000) and in return plaintiff would forever release and discharge Cherry from any liability related to the accident. There is no dispute that the settlement agreement entered into on June 25, 1980, operated as a release of plaintiff's right of action against Cherry.

On August 13, 1980, plaintiff filed this complaint against Sears, Roebuck & Co. Plaintiff alleges that the defendant failed to warn Cherry of the dangerousness of operating a vehicle with a radial and a bias-ply tire on the same axle, that defendant failed to inspect the vehicle to determine whether the mounting was safe, that defendant breached its implied and express warranties of merchantability, and that decedent's wrongful death was a direct and proximate result of defendant's negligence and failures. Defendant has moved this court for summary judgment claiming that the settlement and dismissal of the suit by plaintiff against Cherry operated as a release of plaintiff's right of action against tort-feasor Cherry and all other joint tort-feasors.

The question presented by this motion for summary judgment is whether the release that plaintiff entered into with Cherry on June 25, 1980, operated as a release of all joint tort-feasors, including Sears, Roebuck & Co. Until July 1, 1979, Virginia consistently followed the strict common law rule that the release of one tort-feasor operated as the release of all joint tort-feasors. *Wright v. Orlowski*, 218 Va. 115, 235 S.E.2d 349 (1977); *Shortt v. Hudson Supply and Equipment Co.*, 191 Va. 306, 60 S.E.2d 900 (1950); *First & Merchants National Bank of Richmond v. Bank of Waverly*, 170 Va. 496, 197 S.E. 462 (1938). However, on July 1, 1979, Virginia Code § 8.01–35.1[1] went into effect. This statute provided, in part, that when a covenant not to sue was given in good faith to one of two or more persons liable in tort for the same wrongful death, it would not discharge any of the other joint tort-feasors unless its terms specifically provided for the release of that joint tort-feasor. On July 1, 1980, an amended version of Virginia Code § 8.01–35.1[2] be-

---

1. Va.Code § 8.01–35.1 (in effect July 1, 1979 to July 1, 1980):

A. When a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It shall not discharge any of the other tort feasors from liability for the injury or wrongful death unless its terms so provide; but it shall reduce the claim against the others to the extent of any amount stipulated by the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

2. It shall discharge the tort feasor to whom it is given from all liability for contribution to any other tort feasor.

B. A tort feasor who enters into a settlement with a claimant is not entitled to recover contributions from another tort feasor whose liability for the injury or wrongful death is not extinguished by the settlement, nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

2. Va.Code § 8.01–35.1 (effective July 1, 1980):

A. When a release or a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury, or the same property damage or the same wrongful death:

1. It shall not discharge any of the other tort feasors from liability for the injury, property damage or wrongful death unless its terms so provide; but any amount recovered against the other tort feasors or any one of them shall be reduced by any amount stipulated by the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

2. It shall discharge the tort feasor to whom it is given from all liability for contribution to any other tort feasor.

B. A tort feasor who enters into a release or covenant not to sue with a claimant is not entitled to recover by way of contribution from another tort feasor whose liability for the injury, property damage or wrongful death is not extinguished by the release or covenant not to sue, nor in respect to any amount paid by the tort feasor which is in excess of what was reasonable.

came effective. The amended version of § 8.01–35.1 is very similar to the original version except the amended version provides that covenants not to sue *and* releases can be entered into by one of two or more persons liable in tort for the same wrongful death without necessarily discharging the remaining tort-feasors. However, since the accident and the settlement occurred during the one year period when the original version of § 8.01–35.1 was in effect, the original version of the statute controls this case. Therefore, the outcome of this motion for summary judgment depends upon what effect, if any, the enactment of § 8.01–35.1 (as in effect from July 1, 1979, to July 1, 1980) had on the common law rule followed in Virginia that the release of one joint tort-feasor operated as the release of all joint tort-feasors.

The Virginia Supreme Court has not addressed the question of whether the enactment of the original version of § 8.01–35.1 altered the Virginia substantive law concerning releases. Therefore, since this is a question concerning a Virginia statute and it is one of first impression, this court must attempt to ascertain how the Virginia Supreme Court would decide this issue. *GAF Corp. v. County School Board of Washington County, Virginia*, 629 F.2d 981 (4th Cir. 1980); *Compton v. Nationwide Mutual Ins. Co.*, 480 F.Supp. 1254 (W.D.Va.1979).

In support of the motion to dismiss, defendant submits that the language of the original § 8.01–35.1 clearly and unambiguously pertains only to covenants not to sue and does not affect Virginia's longstanding adherence to the common law doctrine that a release of one joint tort-feasor releases the right of action against all other joint tort-feasors. In support of this assertion, defendant states that the Virginia statute enacted in 1979 was taken nearly verbatim from the "Uniform Contribution Among Tort-feasors Act", Section 4, 12 Uniform Laws Ann. 89 (1955) and North Carolina General Statutes, Section 1B–4 (Repl.Vol.

C. A release or covenant not to sue given pursuant to this section shall be subject to

1969). However, the defendant states that the 1979 Virginia statute differs from the Uniform Act and the North Carolina statute in one very crucial respect and that is that the Virginia legislature deleted the word "release" in its version of the Uniform Act. Defendant submits that this deletion is clear evidence that the Virginia General Assembly intended to omit not only the language but the effect that language would have on Virginia substantive law as well. In addition, defendant states that the term "covenant not to sue" does not encompass a release and that § 8.01–35.1 should not be liberally construed.

Plaintiff argues for a broad interpretation of the covenant not to sue language contained in the original version of § 8.01–35.1. Plaintiff claims that the legislature intended to include releases in the original version of § 8.01–35.1 since it added the release language in the very next legislative session. Plaintiff also submits that the phrase "covenant not to sue" is a generic term which encompasses a settlement or a release and that this court should interpret the language broadly because § 8.01–35.1 is a remedial statute. In oral argument, plaintiff also argued that for the sake of judicial economy, this motion for summary judgment should be overruled.

This court has completely reviewed the pleadings and memoranda filed in this case and has determined from those documents, the authorities cited therein, and from the clear language of the statute, that the original version of Virginia Code § 8.01–35.1 (in effect from July 1, 1979, to July 1, 1980) did not alter the longstanding common law doctrine that a release of one joint tort-feasor releases all other joint tort-feasors. Therefore, the release entered into on June 25, 1980, between the plaintiff and Terrence Cherry operated as a release to all joint tort-feasors, including the defendant in this action, Sears, Roebuck & Co.

Since the language contained in Virginia Code § 8.01–35.1 is clear and unambiguous,

the provisions of §§ 8.01–55 and 8.01–424.

no interpretation is necessary. *School Board v. State Board*, 219 Va. 244, 247 S.E.2d 380 (1978). The statute clearly and unambiguously provides that when *a covenant not to sue* is given in good faith it shall not discharge any of the other tortfeasors from liability unless its terms so provide. The statute does not include releases in its original version and this court does not believe that the Virginia Supreme Court would read the statute to include the word release prior to the insertion of that word by the Virginia General Assembly. In addition, it appears that the Virginia statute was modeled after the Uniform Act with the exception that the word "release" was omitted. In a similar situation, the Virginia Supreme Court recently stated:

> We invoke the elementary rule of statutory construction that when, as here, a statute such as § 16–104 is revised, or when, as here, one act is framed from another, and portions of the former are omitted, the missing part will not be revived by statutory construction but will be considered as annulled and revoked. A contrary holding would have to be based on a presumption that the omission was inadvertent and would require us to "impute to the legislature gross carelessness or ignorance," an exercise in which we will not engage. *Combined Saw & Planer Co. v. Flournoy*, 88 Va. 1029, 1034, 14 S.E. 976, 977 (1892), quoting *Ellis v. Paige*, 18 Mass. (1 Pick.) 43, 45 (1823).

*Godlewski v. Gray*, 221 Va. 1092, 277 S.E.2d 213, 215–16 (1981).

To hold that the Virginia legislature intended to include releases in the original version of § 8.01–35.1 would require this court to impute "gross carelessness or ignorance" to the legislature. Therefore, this court holds that the original version of § 8.01–35.1 pertains only to covenants not to sue. The amended version, effective July 1, 1980, increases the scope of the statute to include releases and its enactment was not merely a clarification of the legislature's previous intent nor was it a needless addition of a synonym.

For the reasons stated above, this court will enter an appropriate Order granting defendant's motion for summary judgment.