Gilbert Lee **CARICKHOFF**, et al., Plaintiffs,

v.

**BADGER–NORTHLAND, INC.,** Defendant.

Civ. A. No. 79–0046–H.

United States District Court, W.D. Virginia, Harrisonburg Division.

March 16, 1983.

---

Frederick H. Miller, Jr., Middleburg, Va., Bernard S. Cohen, Alexandria, Va., for plaintiffs.

Jay T. Swett, Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This case is currently before the court on the motion of the defendant, Badger-Northland, Inc., for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This motion was argued orally before the court by counsel for the parties on January 6, 1983, and in addition, the motion was briefed in numerous memoranda of law which the parties filed with the court. It is well-settled that the party moving for summary judgment has the burden of demonstrating that the test of Rule 56(c) —"no genuine issue as to any material fact" —is satisfied and that the movant is entitled to judgment as a matter of law. *See* C. Wright and A. Miller, *Federal Practice and Procedure,* § 2727 (West 1973). There can be no doubt that what is before the court today is a pure legal issue. The facts upon which the court bases its judgment are not in dispute. Based upon the law as the court perceives it, the defendant's motion for summary judgment must be granted.

This lawsuit was filed as a result of an injury allegedly suffered by one of the plaintiffs, Gilbert Lee Carickhoff, on August 16, 1976, while he was using an allegedly defective liquid manure pump manufactured by the defendant, Badger-Northland. The suit was originally filed in federal district court in the Eastern District of Wisconsin, but was transferred to this court on March 8, 1979, pursuant to the federal forum non conveniens statute, 28 U.S.C. § 1404. Jurisdiction in this action is based upon diversity of citizenship, 28 U.S.C. § 1332, in that all plaintiffs are residents of Virginia, Badger-Northland is a Delaware Corporation with its principal place of business in Wisconsin, and the amount in controversy is in excess of $10,000. While the suit was pending in the Eastern District of Wisconsin, the defendant Badger-Northland impleaded the Patterson Equipment Company of Fairfield, Virginia, as a third-party defendant. In its third-party complaint, Badger-Northland alleged that Patterson had substantially and materially altered the liquid manure pump before its sale to the plaintiff, Gilbert Lee Carickhoff. These alterations, Badger-Northland claimed, were the sole, direct, and proximate cause of the injuries suffered by the plaintiffs.

Once the case was transferred to the Western District of Virginia from the Eastern District of Wisconsin, this court was called upon to decide which jurisdiction's

substantive law would be applied in the case. On September 18, 1979, this court ruled that under the principles of *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), it was duty-bound to apply the choice-of-law rules of the state of Wisconsin, and under those rules, the substantive law of the state of Virginia was found to govern this action. Upon motion of the plaintiffs, this court reconsidered, but reaffirmed, its choice-of-law ruling, in an Order filed on January 18, 1983. Consequently, this court bases its decision on the defendant's summary judgment motion solely with reference to the substantive law of the State of Virginia.

On May 8, 1982, the plaintiffs, in consideration of the sum of $30,000 paid to them by the third-party defendant, Patterson Equipment Company, released and forever discharged Patterson from all liability on account of any claim or cause of action for injuries received by the plaintiffs arising out of the accident that occurred on August 16, 1976. Badger-Northland has moved the court for summary judgment, claiming that the legal effect of the release of the third-party defendant operates as a release of Badger-Northland. The court today holds that it does, although a full explanation will require a thorough examination of the "law of release" in Virginia both before and after the date of the accident.

This court has had numerous opportunities to review this area of the law in the last two years. *See e.g., Statzer v. King Kutter Corp. et al.,* 550 F.Supp. 1062, 1063–64 (W.D.Va.1982); *Perdue v. Sears, Roebuck & Co.,* 523 F.Supp. 203, 204–05 (W.D. Va.1981). Essentially, until July 1, 1979, Virginia consistently followed the strict common-law rule that the release of one tort-feasor operated as the release of all joint tort-feasors. *Wright v. Orlowski,* 218 Va. 115, 235 S.E.2d 349 (1977); *Shortt v. Hudson Supply and Equipment Co.,* 191 Va. 306, 60 S.E.2d 900 (1950); *First & Merchants National Bank of Richmond v. Bank of Waverly,* 170 Va. 496, 197 S.E. 462 (1938). However, on July 1, 1979, *Va.Code* § 8.01–35.1 went into effect. This statute provided, in part, that when a covenant not to sue was given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, it would not discharge any of the other joint tort-feasors unless its terms specifically provided for the release of that other joint tort-feasor. On July 1, 1980, an amended version of *Va. Code* § 8.01–35.1 became effective. The amended version of § 8.01–35.1 was very similar to the original version, except the amended version provided that covenants not to sue *and* releases can be entered into by one of two or more persons liable in tort for the same injury or wrongful death without necessarily discharging the remaining tort-feasors. The statute was amended once again in 1982 (effective April 1, 1982). The 1982 amendment states that the statute applies to all covenants not to sue executed on or after July 1, 1979, and to all releases executed on or after July 1, 1980, regardless of the date that the cause of action accrued.[1]

---

1. *Va.Code* § 8.01–35.1 (effective April 1, 1982) reads as follows:

    A. When a release or a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury, or the same property damage or the same wrongful death:

    1. It shall not discharge any of the other tort feasors from liability for the injury, property damage or wrongful death unless its terms so provide; but any amount recovered against the other tort feasors or any one of them shall be reduced by any amount stipulated by the covenant, or in the amount of the consideration paid for it, whichever is the greater. A release or covenant not to sue given pursuant to this section shall not be admitted into evidence in the trial of the matter but shall be considered by the court in determining the amount for which judgment shall be entered; and

    2. It shall discharge the tort feasor to whom it is given from all liability for contribution to any other tort feasor.

    B. A tort feasor who enters into a release or covenant not to sue with a claimant is not entitled to recover by way of contribution from another tort feasor whose liability for the injury, property damage or wrongful death is not extinguished by the release or covenant not to sue, nor in respect to any amount paid by the tort feasor which is in excess of what was reasonable.

In the present action, the sequence of events is undisputed. On August 16, 1976, the injury occurred while Virginia followed the strict common law rule noted above. On April 1, 1982, § 8.01–35.1, as amended, went into effect applying the statute retroactively to all causes of action, regardless of the date they accrued, so long as the release was executed on or after July 1, 1980. Finally, on May 8, 1982, the plaintiffs executed their release with Patterson. The plaintiffs claim that their release with Patterson Equipment Company only released Patterson and that their reservation of their cause of action against Badger-Northland comports completely with both the wording and the intended result of the several statutes cited *supra*. The defendant insists that a retroactive application of the statute in this case, as subpart D requires, would deprive Badger-Northland of a substantive right—the right to contribution from a joint tort-feasor—in violation of Badger-Northland's constitutional guarantees of due process of law.

Before *Va.Code* § 8.01–35.1 can be applied retroactively, this court must determine that such an application would not destroy a substantive right which existed prior to the enactment of the statute in question. This requires a determination of when, if at all, Badger-Northland's right to contribution[2] came into existence. In their briefs, the plaintiffs and the defendant have clashed over whether Badger-Northland's right to contribution in fact matured into a substantive right before the enactment of the statute. The plaintiffs insist that the right of contribution in Virginia arises only when the joint tort-feasor has actually made payment and cite language in a number of Virginia cases to support this contention. *See e.g., Brooks v. Brown,* 307 F.Supp. 907, 908 (E.D.Va.1969). If the court adopts this view of the right to contribution, then the retroactive application of § 8.01–35.1 would not affect any of the defendant's substantive rights, since its right to contribution has not yet come into existence, Badger-Northland not having made any payment. The defendant asserts to the contrary that its right to contribution accrued on August 16, 1976, the date of the plaintiffs' injury, although it concedes that the right to measure and to collect sums due under the doctrine of contribution matures only when actual payments are made.

The court has undertaken a review of the Virginia case law on this issue and finds that these authorities offer no unambiguous or unequivocal answer. Notwithstanding this ambiguity, this court finds that the defendant's view of when the right to contribution accrues to be a better statement of the law. The most recent decision of the Virginia Supreme Court on this issue is *Nationwide Ins. Co. v. Minnifield,* 213 Va. 797, 196 S.E.2d 75 (1973), where that court was faced with a question related to the instant dispute which offers some guidance. The *Minnifield* court observed at the outset that "the right of contribution arises only when one tort-feasor has paid or settled a claim for which other wrongdoers are also liable," 196 S.E.2d at 76. However, the *Minnifield* court apparently amended this blanket statement when it noted,

> Moreover, there is a valid distinction between the accrual of the equitable, *inchoate* right to contribution that arises at the time of jointly negligent acts and the maturation of the right to *recover* contribution that arises only after payment of an unequally large share of the common obligation.

*Id.* 196 S.E.2d at 77. This court has in fact recently cited the *Minnifield* analysis with approval, commenting that it found "no logic in the Virginia cases that hold no

---

C. A release or covenant not to sue given pursuant to this section shall be subject to the provisions of §§ 8.01–55 and 8.01–424. D. This section shall apply to all such covenants not to sue executed on or after July 1, 1979, and to all releases executed on or after July 1, 1980, regardless of the date the causes of action affected thereby accrued.

2. At common law in Virginia, there was no right to contribution from joint tort-feasors, but that right was statutorily created by the Virginia General Assembly in 1919. This right is codified in *Va.Code* § 8.01–34, subject now to the provisions of § 8.01–35.1.

cause of action for contribution exists prior to payment". *Rambone v. Critzer,* 548 F.Supp. 660, 662 n. 1 (W.D.Va.1982).

■ In other words, the court finds that the defendant Badger-Northland's right to contribution from Patterson as a joint tort-feasor arose on the date of the plaintiff's accident, August 16, 1976, before *Va.Code* § 8.01–35.1 came into existence. The court must now inquire as to what happens to this right of contribution if it applies the statute retroactively. Under subsection A.2, the release executed between the plaintiffs and Patterson Equipment Company discharges Patterson from all liability for contribution to any other tort-feasor, such as Badger-Northland. Close consideration of § 8.01–35.1 may, at first blush, show a confusion or an ambiguity in its wording. Subsection B of the statute reads as follows:

> A tort feasor who enters into a release or covenant not to sue with a claimant is not entitled to recover by way of contribution from another tort feasor whose liability for the injury, property damage or wrongful death is not extinguished by the release or covenant not to sue, nor in respect to any amount paid by the tort feasor which is in excess of what was reasonable.

While subsection B prohibits the released defendant in this case, Patterson, from pursuing any right of contribution against the non-released defendant, Badger-Northland, the language of this subsection, read alone, does not impose a corresponding ban on Badger-Northland from pursuing such a right of contribution against Patterson. Nonetheless, the statute must be read as a whole.

Such a reading of the statute as a whole must give proper weight to subsection A.2, which provides:

> It [the release or covenant not to sue] shall discharge the tort feasor to whom it is given from all liability for contribution to any other tort feasor.

Thus, where subsection B deprives the released tort-feasor of any right to pursue contribution from any non-released tort-feasor, it is apparent from subsection A.2

that the released tort-feasor is shielded from any claim for contribution by the non-released tort-feasors. Thus, as analyzed here, the statute clearly and specifically would prohibit Badger-Northland from seeking contribution from Patterson. Thus, to apply the statute retroactively would deprive the defendant of its right to contribution, which, as the court has explained *supra,* arose at the time of the commission of the tort.

There is no lack of case law in Virginia concerning the circumstances under which legislation may be applied retroactively. Certainly, it is within the province of the Virginia General Assembly, or any state legislature, to enact remedial statutes with retrospective effect provided they deal solely with matters of remedy or procedure. *See Phipps v. Sutherland,* 201 Va. 448, 111 S.E.2d 422, 425 (1959); *Ferguson v. Ferguson,* 169 Va. 77, 192 S.E. 774, 777 (1937). However, it is beyond the power of the legislature to enact retrospective legislation which substantially impairs or destroys vested interests and contractual rights. In *Duffy v. Hartsock,* 187 Va. 406, 46 S.E.2d 570 (1948), one of Virginia's leading cases in this area, the Supreme Court of Virginia approved the retroactive operation of a statute, but also delineated the constitutional boundaries which limit the legislature's power to enact retroactive legislation. After stating that contractual rights may not be impaired nor vested property interests destroyed, 46 S.E.2d at 574, *Duffy* quoted with approval the following language from a South Carolina court:

> Furthermore, it is well settled that the legislature, without violation of the guaranties of due process of law, may reduce the period in which actions may be brought and may make such reduction applicable to existing causes of action, "subject however to the conditions that it may not entirely take away the right to sue, nor so unreasonably shorten the period as practically to take away all remedy." 16 C.J.S. Constitutional Law, Sec. 615.

46 S.E.2d at 575.

The court finds that a retroactive application of *Va.Code* § 8.01–35.1 would entirely

take away Badger-Northland's right to sue Patterson for contribution. The court regards this right as substantive, not as a right which deals only with either procedure or remedy. This right, as stated *supra*, was a right which arose at the time of the accident in August of 1976, long before any of the provisions of the various statutes were put into effect. Thus, to apply the statute retroactively would destroy a substantive right which Badger-Northland possessed prior to the enactment of the first statute, constituting a violation of the defendant's guarantee of due process of law under the United States Constitution. The effort of the legislature in adopting § 8.01–35.1, effective April 1, 1982, is clearly intended to give such retroactive effect to the previous statutes cited, but the final effort in this legislative saga is equally within the strictures limiting the power of the legislature to affect adversely the substantive right involved in this case. Accordingly, this court will not permit the statute to be applied retroactively in this case.

In light of the above, the court must apply the law as it existed at the time of Carickhoff's injury, a period when Virginia followed the strict common law rule that the release of one joint-feasor released all tort-feasors. The release of the Patterson Equipment Company by the Carickhoffs operates to release the defendant Badger-Northland as to all claims for injuries and damages arising out of the same accident.

The court's disposition of this issue consequently results in a dismissal of the entire cause of action, and it is thus not necessary to address the motions with respect to Badger-Northland's express and implied warranties.