RICHARD MASON CAUTHORN, III, LEGAL GUARDIAN, ETC.

V.

BRITISH LEYLAND, U.K., LTD., ET AL.

Record No. 840223

April 24, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Russell, and Thomas, JJ., and
Harrison, Retired Justice

* Justice Cochran prepared and the Court adopted the opinion in this case prior to the
effective date of his retirement on April 20, 1987.

*Susan M. Danielski (Christopher C. Fallon, Jr.; Peter J. Judah; Cozen, Begier & O'Connor*, on briefs), for appellants.

*William B. Poff (W. Fain Rutherford: William H. Robinson, Jr.; H. Slayton Dabney, Jr.; Adele Baker; William O. Tune, Jr.; Linda Davis Frith; Woods, Rogers, Muse, Walker & Thornton; McGuire, Woods & Battle; Gentry, Locke, Rakes & Moore*, on briefs), for appellees.

COCHRAN, J., delivered the opinion of the Court.

In April 1977, Eva Rebecca Cauthorn, a minor, was injured when the 1966 Triumph automobile in which she was a passenger, owned by Mary Ann Graves and operated by Ricky June Peery, collided with another vehicle. The automobile was insured under a policy of insurance issued to Graves by The Home Insurance Company. Peery was insured under a policy issued by The Hartford Insurance Company. These insurance companies petitioned the court under Code § 8.01-424 for approval of a compromise settlement of Rebecca's personal injury claim for $100,000, the maximum aggregate coverage under the policies.

Rebecca's parents and legal guardian answered, requesting that the settlement be approved; her guardian *ad litem* responded that the settlement was in her best interests. By order dated April 27, 1978, the court approved the settlement and ordered the release of the companies "from any and all further liability under their respective policies to the respondents herein for damages arising out of the accident."

In July 1982, Rebecca's guardian, Richard Mason Cauthorn, III, filed this action against the manufacturer of the automobile, the manufacturer of its wheels, and the dealer who sold the automobile to Graves,[1] alleging that each defendant was guilty of negligence and breach of warranties of merchantability and fitness. In addition to other defensive pleadings, each defendant filed special pleas, contending that the court-ordered release of April 27, 1978, also released the defendants from any liability for Rebecca's personal injuries resulting from the accident.

The trial court conducted three evidentiary hearings, receiving testimony concerning the intent of the parties in reaching settlement and in releasing the insurance companies. Concluding that the settlement documents were ambiguous, the court considered the parol evidence and found that the parties intended the release of the companies also to release the insured driver, Peery. Relying on *Perdue* v. *Sears, Roebuck & Co.*, 523 F. Supp. 203 (W.D. Va. 1981), *aff'd*, 694 F.2d 66 (4th Cir. 1982), the court sustained the defendants' pleas of release and dismissed the action. We refused that portion of Cauthorn's petition for appeal which assigned error to the ruling that the parties released the driver and granted this appeal limited to the question "whether release of the claims for negligence bars recovery for the claims based upon breach of warranty."[2]

Prior to the enactment of Code § 8.01-35.1 in 1979, the rule of law in Virginia was that a release of one joint tortfeasor released all joint tortfeasors. *Bartholomew* v. *Bartholomew*, 233 Va. 86, 87, 353 S.E.2d 752, 753 (1987); *Wright* v. *Orlowski*, 218 Va. 115, 120, 235 S.E.2d 349, 352 (1977). As we stated in *Wright*, this rule is derived from the doctrine of accord and satisfaction:

---

[1] The named defendants were British Leyland, U.K., Ltd. (now BL Cars, Ltd.), and its agent, British Leyland Motors, Inc.; TPPI Engineering, Inc.; and University Motors, Ltd.

[2] Numerous decisions have construed the effect of covenants not to sue or releases in product liability cases involving breach of warranty claims. In each, the court has assumed that a person who breached such a warranty was subject to the former rule that release of one joint tortfeasor releases all joint tortfeasors, although the precise question has not been before the court for decision. *See, e.g., Bartholomew* v. *Bartholomew*, 233 Va. 86, 353 S.E.2d 752 (1987); *Hayman* v. *Patio Products, Inc.*, 226 Va. 482, 311 S.E.2d 752 (1984); *Perdue* v. *Sears, Roebuck & Co.*, 694 F.2d 66 (4th Cir. 1982); *Carickhoff* v. *Badger-Northland, Inc.*, 562 F. Supp. 160 (W.D. Va. 1983); *Statzer* v. *King Kutter Corp.*, 550 F. Supp. 1062 (W.D. Va. 1982).

It is a *release* which actuates the rule. The making of an *accord* and the acceptance of *satisfaction* will effect a release. When a tortfeasee accepts satisfaction from one tortfeasor *for the part he played* in the joint tort, that tortfeasor is released and his release operates to release all other tortfeasors.

218 Va. at 120, 235 S.E.2d at 353 (emphasis in original).

■ Although this rule is stated with reference to the parties as "joint tortfeasors," its application to a particular case does not depend upon their relationship as joint tortfeasors. *Shortt* v. *Hudson Supply, etc., Co.*, 191 Va. 306, 310, 60 S.E.2d 900, 902-03 (1950); *First, etc., Bank* v. *Bank of Waverly*, 170 Va. 496, 502, 197 S.E. 462, 464-65 (1938); *McLaughlin* v. *Siegel*, 166 Va. 374, 377, 185 S.E. 873, 874 (1936). In *McLaughlin*, we stated:

It is not the relationship of the several wrongdoers among themselves, which is the foundation for the rule that a release of one wrongdoer releases all others from liability for the same wrong, it is the fact that the injured party is entitled to but one satisfaction for the same cause of action.

166 Va. at 377, 185 S.E. at 874. In *Shortt*, the nature of a plaintiff's claim against one of the defendants was not ascertainable from the record, but we nevertheless found that the plaintiff had "a single claim" — "an indivisible cause of action for damages for his personal injuries arising out of the collision." Because his claim was for an indivisible injury, we held that, "in determining whether he has received satisfaction therefor and has released one of those responsible for the damage, it is immaterial whether those guilty of the wrongdoing were, strictly speaking, joint tortfeasors." 191 Va. at 309-10, 60 S.E.2d at 902-03.

■ In this case, the injuries complained of are those for which the compromise settlement provided compensation. Rebecca sustained injuries which, although they may have had more than a single cause, constituted a single indivisible injury. Her settlement with and release of the insurance companies and their insureds constituted an accord and satisfaction of her cause of action for her single indivisible injury. As such, this release also released all other parties allegedly responsible for her injuries.

Cauthorn asserts, however, that Rebecca's claim against the driver and her claim against the defendants represent two causes

of action, one sounding in tort and the other in contract. Citing *Katzenberger* v. *Bryan*, 206 Va. 78, 141 S.E.2d 671 (1965), he argues that settlement of the tort claim and release of the allegedly negligent driver does not preclude proceeding against the defendants on a separate and distinct cause of action for breach of warranty. We do not agree.

In *Katzenberger*, the plaintiffs, purchasers of real property, sued the sellers for breach of warranty of title after learning that a portion of the property conveyed was not owned by the sellers. The purchasers accepted settlement of this claim and released the sellers, then proceeded on a negligence theory against the lawyer who had certified incorrectly that the sellers were vested with good title to the property. *Id.* at 79, 141 S.E.2d at 672. The trial court held the second action barred by the release of the sellers, finding that there had been an accord and satisfaction. *Id.* at 80, 141 S.E.2d at 672. We reversed, concluding that the purchasers had not an indivisible cause of action but two separate and distinct causes of action, one in contract against the sellers and the other in tort against the lawyer. *Id.* at 84, 141 S.E.2d at 675.

Our decision, however, did not rest solely on the distinction between the theories of recovery; it was also based on the difference between the relief sought in the two actions. In either proceeding, the purchasers could have recovered the value of the portion of the property not conveyed and the diminution in the value of the residue caused by the loss of ingress and egress over the portion not conveyed. But a third element of damages was not common to both causes of action. The loss of the use of certain improvements to the property made by the purchasers was an item of consequential damages not available in the contract action against the sellers but recoverable in the tort action as proximately resulting from the negligence of the lawyer. Thus, the purchasers' damages were not identical in the two actions and did not arise from a single indivisible injury; therefore, their release of the sellers was not an accord and satisfaction of their claim against the lawyer.[3] *Id.* at 84-85, 141 S.E.2d at 675-76.

█ Cauthorn concedes that, if we hold that this action for breach of warranty sounds in tort, the release of the driver will

---

[3] Although there was no accord and satisfaction, we expressly ruled that the purchasers could not recover in the second action for diminution in the value of the residue to the extent that they had already received such damages in the settlement of the first. 206 Va. at 85-86, 141 S.E.2d at 676-77.

release the other alleged wrongdoers. He argues, however, that this action sounds in contract. In our view of the case, it is not necessary for us to determine whether the action sounds in tort or in contract. We hold that where there is one indivisible injury, as here, for which settlement has been consummated, unconditional release of one allegedly liable for the injury bars recovery against others also allegedly liable, regardless of the theory upon which liability is predicated. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*

POFF, J., concurring.

I concur in the result. I do not disagree with the analysis the majority makes, but I favor a different rationale.

I would hold that an action for breach of warranty in a products liability case sounds in tort when the plaintiff claims damages for personal injury or damages for injury to property other than the product covered by the warranty. That holding would activate the rule at common law and, applied in this case, the plaintiff's release of the negligent driver would have released the negligent manufacturers and the automobile vendor as well.

I recognize that this Court has held that an action for breach of implied warranty of foodstuffs is an action *ex contractu. Brockett* v. *Harrell Bros., Inc.,* 206 Va. 457, 462-63, 143 S.E.2d 897, 902 (1965). I believe that holding should be confined to the facts in that case. To apply it as a *per se* rule is to overlook the fact that "[o]riginally, actions for breach of warranty were tort actions." *DuPont Co.* v. *Universal Moulded Prod.,* 191 Va. 525, 534, 62 S.E.2d 233, 236 (1950). *See also Standard Paint Co.* v. *E. K. Vietor & Co.,* 120 Va. 595, 602, 91 S.E. 752, 754-55 (1917); *Trice* v. *Cockran,* 49 Va. (8 Gratt.) 442, 450 (1852).

> The law of warranty is older by a century than special assumpsit, and the action on the case on a warranty was in part the foundation of the action of assumpsit. An action on a warranty was regarded for centuries as an action of deceit, and it was not until the second half of the eighteenth century that the first reported decision occurs of an action in assumpsit on a warranty. And it is still generally possible where a distinction of procedure is observed between actions of tort

and of contract to frame the declaration for breach of warranty in tort.

It is probable that most persons instinctively think of a warranty as necessarily a contract or promise, but though frequently warranties are true promises and contracts, in other cases they are merely representations which induce a sale, and if it is said that a promise or contract is implied from such representation, the implication is one of law and not of fact. It may be added that the whole law of implied warranty both of title and of quality is based on implied representations rather than on promises.

8 Williston, *A Treatise on the Law of Contracts* § 970 at 485-89 (3d ed. 1964) (footnotes omitted).

In a products liability case, the focus of the complaint is not upon a promise but upon a defect in the product. The purchaser claims damages for personal injury or damages for injury to property owned by the purchaser other than the product covered by the warranty. The purchaser alleges that his damages were the proximate result of his use of the defective product. At trial, the plaintiff attempts to show that the defect is the result of the manufacturer's negligence in design or production; that, because the manufacturer and the seller knew or should have known that the product was not fit for its intended use, they were guilty of misrepresentation which induced the consumer to purchase and use the product; and, hence, that both the manufacturer and the seller were liable in tort for any personal injury or property damage suffered by the plaintiff which resulted from the use of the defective product.

As a general rule, actions founded upon a contract are subject to statutory time limitations different from those imposed upon actions sounding in tort. Compare Code § 8.01-243, which applies to tort actions generally, and Code § 8.01-246, which applies to "actions founded upon a contract". The general rule does not apply, however, "in products liability actions for injury to person and for injury to property, other than the property subject to contract". Code § 8.01-246. Thus, the General Assembly has determined that, for purposes of the statute of limitations, a breach of warranty claim in a products liability action sounds in tort; said differently, an action based upon a breach of warranty claim

sounds in contract only when the damage claimed by the purchaser is the loss of his bargain with the seller.

The culpable conduct expressly or implicitly charged in a breach of warranty claim in a products liability case is negligence or misrepresentation and, in my view, all rules governing actions sounding in tort, whether procedural or substantive and whether invoked by the plaintiff or the defendant, should apply.

RUSSELL, J., joins in the concurring opinion.