# CIRCUIT COURT OF FAIRFAX COUNTY

Berta Benitez

v.

Ford Motor Co. et al.

November 23, 2005

Case No. (Law) 222545

BY JUDGE JONATHAN C. THACHER

This matter came on August 25, 2005, for a hearing on Defendants' Motion to Dismiss for Spoliation of Evidence and Defendants' Motion to Dismiss or, in the Alternative, to Determine the Amount of Setoff. After considering counsels' arguments and reviewing the applicable law, the Court reaches the findings and conclusions stated below.

*I. Background*

This suit arises out of an automobile accident that occurred on or about September 14, 1999, in Arlington County, Virginia. Plaintiff Berta Benitez, a front-seat passenger in a 1995 Ford Escort owned by her employer, Harold Gerrick, sustained injuries including a traumatic injury to her left eye resulting in a permanent impairment of effective vision in that eye. The collision was caused by a third-party insured of GEICO.

Following the accident, in July of 2000, Benitez settled her claim with GEICO, executing a release and covenant not to sue pursuant to Va. Code § 8.01-35.1. The release was given in consideration for payment of $280,000 for Benitez's injuries and apportioned the amount of the settlement such that $10,000 was allocated for any claims for her eye injury with the balance of $270,000 allocated to her other injuries from the accident. In the time during

which Benitez was negotiating the settlement with GEICO, she was also investigating the cause of her injuries. However, due to the conduct of the Escort's owner, Mr. Gerrick, whose interests were adverse to those of Benitez, and GEICO's representation that the vehicle had already been destroyed (GEICO purchased the vehicle from Mr. Gerrick following the collision), Benitez was not able to locate the Escort for inspection before it was sold by GEICO to a salvage company and subsequently destroyed in January of 2000.

Following a determination that the injury to her eye was caused by the proper deployment of an allegedly defectively designed airbag, Benitez filed this action on September 11, 2001. Defendants were served on September 3, 2002.

## II. Discussion

On August 25, 2005, the defendants ("Ford") brought on for hearing their motions to dismiss the plaintiff's cause. Ford's motions assert two separate theories for dismissal of the plaintiff's cause: (1) spoliation of evidence, and (2) bad faith settlement with a separate defendant. Ford petitions in the alternative for a pre-trial determination of the amount of setoff.

## A. Spoliation of Evidence

The spoliation issue was extensively briefed and argued. Based upon the arguments of counsel, the defendants' motion to dismiss the plaintiff's cause for spoliation of evidence is denied.

Ford asserts that Benitez breached her duty to preserve evidence by not taking proper steps to insure that the Escort was not destroyed or, at least, to notify Ford of the vehicle's whereabouts. Further, Ford notes that Benitez first notified Ford of her claim by her counsel's letter of September 4, 2001, almost two years after the accident. Ford argues that Benitez's failure to preserve the Escort constitutes spoliation of material evidence in this case and that the appropriate sanction for her alleged wrongdoing is dismissal of her claim.

Benitez counters, asserting that she breached no duty because she did not own the Escort, did not have access to the vehicle after the accident, did not act to destroy the Escort, and did not in bad faith allow the Escort to be destroyed before defendants had a chance to secure and/or inspect the vehicle. Benitez also asserts that she made diligent efforts to locate the Escort following the accident, but was thwarted in part by the owner of the Escort, whose interests were adverse to her own, and in part by GEICO's good-faith but mistaken representation that the Escort had already been destroyed. Further, Benitez argues that defendants' case is not prejudiced by the loss of the Escort because

the Motion for Judgment alleges a design defect in the passenger-side airbag in all 1995 Escorts that caused her injuries when the airbag deployed properly. Therefore, she argues that there is no need for the actual Escort involved in this case, since the design defect that allegedly caused her injuries can be replicated through testing on other 1995 Escorts.

Ford relies primarily on various non-Virginia cases for the proposition that plaintiff had a duty to preserve the Escort because she knew or should have known that the vehicle would be relevant to her claim against Ford. Further, Ford argues that, even though plaintiff did not own the Escort, she should have either taken greater steps to secure the vehicle in anticipation of litigation or at least notified Ford of her potential claim so that Ford could have located and inspected the Escort before it was destroyed. Ford cites *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001), as well as various cases from other states, while only citing one Virginia letter opinion, *Church v. General Motors Corp.*, No. 86-383 (Va. Cir. Ct. Wise Co., July 11, 1991), in support of its spoliation argument.

Benitez correctly points out that none of the cases that defendants rely on are binding on this Court. Therefore, an analysis of all the cases that Ford cites in its brief is not necessary to the rendering of this opinion. Further, an analysis of the cases on which Ford primarily relies illustrates that they are distinguishable from the instant case, and, accordingly, are not applicable to the defendants' motion.

For example, *Silvestri* is a Fourth Circuit Court of Appeals case which Ford relies on for the proposition that Benitez had a duty to preserve the Escort and/or notify Ford of the location of the vehicle or at least give notice of her potential claim. In *Silvestri*, the plaintiff was injured while driving his landlady's vehicle while intoxicated and at an excessive rate of speed. The plaintiff sued General Motors, alleging that the airbag in the vehicle did not deploy as warranted after receiving two expert opinions regarding General Motors' liability pursuant to a post-accident inspection by those experts. *Silvestri*, 271 F.3d at 586-87. The owner of the vehicle subsequently transferred title to his insurance company, which in turn sold the vehicle to a repair shop which repaired it and re-sold it. *Id.* at 587. Despite having expert opinions on the liability of General Motors, the plaintiff did not notify General Motors until filing his claim three years after the accident. *Id.* The Fourth Circuit affirmed the trial court's ruling that the plaintiff had breached his duty to either to preserve the vehicle or notify General Motors of its availability and his claim and upheld dismissal as a sanction for spoliation of material evidence. *Id.* at 589. The trial court noted, and the Fourth Circuit affirmed, that the reselling and repairing of the vehicle after plaintiff's experts had an opportunity to inspect the vehicle, but before defendants could do so, severely prejudiced General Motors' case. *Id.* at 593.

The facts of *Silvestri*, while arguably similar, are distinguishable from the facts of the instant case in several significant ways. First, unlike in the instant case, the plaintiff in *Silvestri* had "unlimited access" to the vehicle, while Benitez did not have access and indeed did not know the vehicle's location. Second, the plaintiff in *Silvestri* had the benefit of two expert opinions as to General Motors' liability, while no experts had inspected the Escort in anticipation of litigation, giving Benitez no information outside the fact of the injury to her eye itself, regarding a potential claim against Ford before the vehicle was destroyed. Third, the plaintiff in *Silvestri*, in addition to knowing of a potential claim against General Motors, was told by his experts of the need to preserve the vehicle and/or to give General Motors access to the vehicle, while Benitez did not have such knowledge or advice. Fourth, the plaintiff in *Silvestri* had the benefit of his own experts' inspection of the vehicle, which the court found to give the plaintiff an unfair advantage over General Motors in litigation, while Benitez, having not had experts inspect the vehicle, gained no similar unfair advantage over Ford. Fifth, Benitez was thwarted in her efforts to locate the vehicle by the owner of the Escort, Harold Gerrick, due to his belief that he was exposed to liability for not having insured the car and his belief that he had no obligation to communicate with any party other than GEICO regarding the Escort and the accident.

Perhaps most significantly, the nature of the claim in *Silvestri* was one based on defective airbag deployment, rather than the instant case, which alleges a design defect in all passenger-side airbags in the 1995 Ford Escort production line. In *Silvestri*, the plaintiff's failure to preserve evidence "highly prejudiced" the defense, because "the determination of whether the airbag should have deployed could only be determined by a reconstruction of the accident," and General Motors was "denied the opportunity to "take . . . necessary crush measurements." *Id.* at 589. The *Silvestri* court noted that the trial court found that General Motors was "forced to rely on the few measurements taken by plaintiff's experts," and that the "inability to take crush measurements alone" highly prejudiced the defense. *Id.* Here, there is no similar high level of prejudice, as Benitez did not gain an unfair advantage by having experts inspect the Escort before it was destroyed and because Benitez's claim against Ford alleges a production-wide design defect. The nature of the claim, coupled with the absence of unfair advantage, distinguishes the instant case from *Silvestri* to the point that dismissal of Benitez's claim is unwarranted.

Benitez cites *Gentry v. Toyota Motor Co.*, 252 Va. 30, 471 S.E.2d 485 (1996), in support of her opposition to Ford's spoliation motion. In that case, the Supreme Court of Virginia held that the trial court erred in dismissing the plaintiff's case due to spoliation of evidence when one of plaintiff's experts, in

inspecting the subject vehicle, effectively destroyed the vehicle making it unavailable for testing by the defense. The Supreme Court reversed because it was plaintiff's expert, without permission from plaintiff or plaintiff's counsel, who acted to destroy the vehicle. Thus, a sanction of dismissal was inappropriate, considering that "the purpose of such a sanction is to punish the offending party and to deter others from acting similarly." *Id.* at 34. Here, the actual owner of the vehicle, Harold Gerrick, was the person who was primarily responsible for the destruction of the Escort. Neither Benitez nor her attorney knew where the vehicle was located, and neither gave permission nor acted to have the Escort destroyed. Therefore, a sanction of dismissal would not punish any wrongful activity of Benitez or her attorney. Further, Benitez did not breach any duty under Virginia law to preserve the Escort, since she was not the owner of the Escort and did not have a right to force Mr. Gerrick or any other third party to preserve it. *See Austin v. Consolidation Coal Co.*, 256 Va. 78, 501 S.E.2d 161 (1998) (holding that owner of evidence did not have legal duty to preserve evidence for plaintiff's benefit, and plaintiff therefore had no right to force the owner to preserve same and therefore no cause of action for its destruction).

For the reasons outlined above, Defendants' Motion to Dismiss for Spoliation of Evidence is denied.

## B. *Bad-Faith Settlement; Pretrial Determination of Set-Off*

The motion to dismiss alleging "bad faith" settlement with a separate defendant was also extensively briefed and argued. Based upon the arguments of counsel, the defendants' motion to dismiss as a bad faith settlement and/or pretrial determination of set-off is denied.

Ford argues in its brief, first, that the settlement and covenant not to sue was not procured by Benitez in good faith and thus falls outside of the scope of Va. Code § 8.01-35.1. That statute provides, in pertinent part, "When a release or covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury . . . it shall not discharge any of the other tortfeasors from liability for the injury . . . unless its terms so provide." Va. Code § 8.01-35.1. Ford contends, essentially, that the covenant not to sue given GEICO and its insured was not given in good faith because the negotiations between Benitez and GEICO ceased being at arms length once the full settlement amount was agreed upon. Since the apportionment of $10,000 for the eye injury was agreed upon only after the full settlement amount was negotiated, Ford argues that the actions of GEICO and Benitez amount to collusion and bad faith. Also, Ford argues that the apportionment of damages for Benitez's eye injury from the rest

of the injuries she sustained in the accident is improper and that she should be found to have suffered one indivisible injury rather than two distinct sets of injuries. Ford cites *Cauthorn v. British Leyland, U.K., Ltd.*, 233 Va. 202, 355 S.E.2d 306 (1987), in support of its argument that Benitez's injuries are indivisible, thus precluding recovery from Ford after settlement with GEICO. Therefore, Ford asserts, Benitez's settlement with GEICO is subject to the common law rule that a release of one joint tortfeasor is a release of all, citing *Cauthorn*, and *Jones v. General Motors Corp.*, 856 F.2d 22, 24 (4th Cir. 1998). Ford accordingly moves for dismissal under a common law plea of release.

Benitez responds that Ford does not cite any authority "that settlement for specific separately allocated amounts in an arms length transaction constitutes bad faith." Plaintiff's Memo. In Opp. at 4. Benitez cites *Tazewell Oil Co. v. United Virginia Bank*, 243 Va. 94, 413 S.E.2d 611 (1992), in support of her position that allocating $10,000 for the injury to her eye, out of the $280,000 total settlement amount with GEICO, is not an act of bad faith and does not release Ford from liability for her eye injury.

Despite Ford's arguments to the contrary, this Court finds *Tazewell* to be controlling. In that case and in the case at bar, the plaintiff negotiated a settlement with other tortfeasors under Va. Code § 8.01-35.1, which it claimed did not release the remaining tortfeasor, and which specified a certain amount to be credited to the claims against those remaining tortfeasors. *Id.* at 106. The Court in *Tazewell* disagreed with the defendant's argument that the settlement released the defendant under a common law plea of release. *Id.* Further, the Court rejected the defendant's argument that the allocation of only $15,000 to be credited to the other unsettled claims was in bad faith. *Id.* at 107. Similarly, in the instant case, Benitez settled with GEICO, negotiating a release and covenant not to sue, which allocated $10,000 to be credited against the recovery from other joint tortfeasors. Accordingly, the release and covenant not to sue did not release Ford from liability, and was not in bad faith, being expressly allowed by the clear language of Va. Code § 8.01-35.1.

*Cauthorn*, while being somewhat factually similar to the case at bar, is inapplicable for the simple reason that the settlement in that case was reached before the General Assembly enacted Va. Code § 8.01-35.1. *Cauthorn*, 233 Va. at 204.

Further, Ford's alternative request for a pre-trial determination of the amount of setoff is without merit. Indeed, Va. Code § 8.01-35.1 contemplates that a court may have to choose between "the amount stipulated by the covenant or release, or in the amount of consideration paid for it, whichever is greater." The recitation of the amount of consideration paid the parties to the release attributed to this defendant is not of itself bad faith. *Tazewell*, 243 Va. at 107.

The amount of consideration paid for the release is a matter to be determined at such time as judgment may be entered in this case.

For the reasons outlined above, Defendants' Motion to Dismiss, or, in the Alternative, to Determine Amount of Setoff is denied.

## III. Conclusion

Defendant's Motion to Dismiss for Spoliation of Evidence and Defendant's Motion to Dismiss, or, in the Alternative, to Determine Amount of Setoff are hereby denied.