### Richmond

Thomas B. Hayman, II

v.

Patio Products, Inc. and
G. C. Murphy Company

Record No. 810546.

January 20, 1984.

Present: All the Justices.

*Robert E. Long (Montague, Montague and Long, Ltd.*, on brief), for appellant.

*G. Kenneth Miller (May, Miller and Parsons*, on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, the question presented is whether an agreement entitled "Covenant Not to Sue" between a plaintiff, who sought damages in the trial court for alleged personal injuries, and certain defendants, released all other defendants as joint tort-feasors. G. C. Murphy Company, a defendant not a party to the agreement, filed a motion for summary judgment on the ground that the agreement was in effect a release which discharged Murphy and all the other joint tort-feasors from liability. The trial court, ruling that the agreement was a release, granted the motion and entered summary judgment in favor of Murphy. Concluding, upon a review of the record, that the trial court erred in so ruling, we will reverse the judgment appealed from and remand the case for trial.

The facts are undisputed. On the evening of June 10, 1977, Thomas B. Hayman, II, then a minor, attended an outdoor graduation party at the home of a friend. A garden torch was knocked over, spilling liquid fuel on Hayman. The fuel ignited and burned Hayman severely.

Hayman, suing by his next friend, initiated two separate actions to recover damages for his injuries. The first, numbered 1683, named as defendants the hosts and certain guests at the party, and alleged that the negligence of each was a proximate cause of Hayman's injuries. The second, numbered 1684, named as defendants Murphy, the retail seller of the garden torch, and Patio Products, Inc., the wholesale distributor, and alleged negligence and breaches of implied warranties. Patio made no appearance; Murphy filed grounds of defense and cross-claim against Patio for indemnification.

On October 19, 1979, the action against the individual defendants was settled for $43,500 with the approval of the trial court. The following document, executed by the parties, was tendered to the court:

### COVENANT NOT TO SUE
### (At Law No. 1683)

Now comes the plaintiff herein, Thomas B. Hayman, II, an infant, who sues by and through his mother and next friend, Mary Belle Hayman, by counsel; George C. Stein, Sr. and Dawn Stein, by counsel; Stephen Simpson, an infant, by counsel; and Timothy H. Morgan, an infant, by counsel, and represent that, by agreement of the parties aforesaid, the parties have agreed to enter into this Covenant Not to Sue based upon the following terms and conditions:

1. This Covenant Not to Sue is entered into in conformity with the provisions of Section 8.01-35.1 of the Code of Virginia of 1950, as amended.

2. That the defendants herein, George C. Stein, Sr., Dawn Stein, Stephen Simpson and Timothy H. Morgan, will pay unto the said Mary Belle Hayman, mother of the plaintiff herein, Thomas B. Hayman, II, and his attorneys, Montague, Montague and Long, Ltd., or as ordered by the Court pursuant to Section 8.01-424 of the Code of Virginia of 1950, as amended, the sum of Forty-Three Thousand, Five Hundred and 00/100 Dollars ($43,500.00).

3. That upon payment of the said Forty-Three Thousand, Five Hundred and 00/100 Dollars ($43,500.00) and pursuant to Section 8.01-35.1, supra, said payments shall discharge the said George C. Stein, Sr., Dawn Stein, Stephen Simpson and Timothy H. Morgan from all liability to the plaintiff and from all liability for contribution to any other tort feasor.

4. As provided in Section 8.01-35.1 mentioned aforesaid, this Covenant Not to Sue shall not in anywise limit the plaintiff's right to proceed with that suit currently pending before this Court under the style of "Thomas B. Hayman, II, an infant, etc. vs. Patio Products, Inc. and G. C. Murphy Company, At Law No. 1684 - 9/29/77".

On the same day, the trial court entered an order approving the agreement and further providing:

NOW, THEREFORE, it is further ADJUDGED, ORDERED, and DECREED that said payments do hereby discharge the said George C. Stein, Sr., Dawn Stein, Stephen Simpson, and Timothy H. Morgan from all liability to the plaintiff and for his mother and next friend and for all liability for contribution to any other tort feasor; provided, however, that nothing herein contained shall limit or prejudice the right of the plaintiff under the conditions prescribed in Section 8.01-35.1, as aforesaid, to prosecute a judgment of that certain case now pending in this Court and styled "Thomas B. Hayman, II, an infant, etc. vs. Patio Products, Inc. and G. C. Murphy Company, At Law No. 1684 - 9/29/77".

Murphy filed a motion for summary judgment in the action numbered 1684, alleging that it was released by the compromise settlement and payment approved in the other action. The trial court, with a different judge presiding, granted the motion and entered summary judgment in favor of Murphy on January 14, 1981.

By Chapter 679 of the 1979 Acts of the General Assembly, effective July 1, 1979, a new section was added to the Code of Virginia, reading as follows:

## § 8.01-35.1. Covenants not to sue and right to contribution.

§ 8.01-35.1. **Covenants not to sue and right to contribution.** — A. When a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

1. It shall not discharge any of the other tort feasors from liability for the injury or wrongful death unless its terms so provide; but it shall reduce the claim against the others to the extent of any amount stipulated by the covenant, or in the amount of the consideration paid for it, whichever is the greater; and

2. It shall discharge the tort feasor to whom it is given from all liability for contribution to any other tort feasor.

B. A tort feasor who enters into a settlement with a claimant is not entitled to recover contributions from another tort feasor whose liability for the injury or wrongful death is not extinguished by the settlement, nor in respect to any amount paid in a settlement which is in excess of what was reasonable.

In 1980, Code § 8.01-35.1 was amended to include releases as well as covenants not to sue. Acts 1980, c. 411. In 1982, the statute was further amended to apply to covenants not to sue executed on or after July 1, 1979, and to releases executed on or after July 1, 1980, regardless of the dates the causes of action accrued. Acts 1982, c. 196. Since the agreement in the present case was executed in September of 1979, it is subject to the provisions of the statute as originally enacted.

For many years under the common law, before the enactment of Code § 8.01-35.1, a release of, or an accord and satisfaction with, one of several joint tort-feasors operated as a release of all. *Wright* v. *Orlowski*, 218 Va. 115, 235 S.E.2d 349 (1977). The rule applied even if language in the settlement agreement provided that it should not release the other tort-feasors. *Shortt* v. *Hudson Supply, etc., Co.*, 191 Va. 306, 60 S.E.2d 900 (1950); *Ruble* v. *Turner*, 12 Va. (2 Hen. & M.) 38 (1808). A covenant not to sue one joint tort-feasor, however, did not release the others. *Lackey* v. *Brooks, Adm'r*, 204 Va. 428, 432, 132 S.E.2d 461, 464-65 (1963).

If, as Murphy contends, a covenant not to sue coupled with payment and discharge of a joint tort-feasor after July 1, 1979, released the other joint tort-feasors, the enactment of Code

§ 8.01-35.1 merely affirmed what had been the common law for at least 170 years. We will not attribute such a useless gesture to the General Assembly. We believe the General Assembly intended to change a rule of law which tended to reward a recalcitrant tort-feasor at the expense of a joint tort-feasor who was willing to settle out of court. We believe the legislative intent, as shown by the statutory language, was to promote the use of a covenant not to sue by permitting payment thereunder and discharge of one joint tort-feasor without causing the covenant to effect the release of the other joint tort-feasors.

The statute provides that any settlement reached between a claimant and a tort-feasor "shall reduce the claim against the [other tort-feasors] to the extent of any *amount* stipulated by the covenant, or in the *amount* of the *consideration paid for it*." Code § 8.01-35.1(A)(1) (emphasis added). Part B of the statute speaks of a "settlement" between a "claimant" and a "tort feasor." Under the common law, payment of a consideration for a settlement is the equivalent of an accord and satisfaction, and "[t]he making of an *accord* and the acceptance of *satisfaction* will effect a release." *Wright*, 218 Va. at 120, 235 S.E.2d at 353 (emphasis in original). We hold, however, that a covenant not to sue, drafted in accordance with the statutory provisions, is excluded from this rule. The statute authorizes payment of consideration under the covenant not to sue without discharging non-paying joint tort-feasors. The statute protects the paying tort-feasor from liability for contribution and prohibits him from exacting contribution from non-paying joint tort-feasors against whom claims remain outstanding. The statute facilitates prompt settlement, payment, and discharge of paying tort-feasors without releasing those non-paying joint tort-feasors who prefer to have their liability determined in litigation, with its attendant delays.

The construction placed upon the statute below prejudices the rights expressly reserved by the parties and the trial court to an infant plaintiff. The agreement reserving those rights was drafted in the language of the statute. In the order confirming the settlement, the trial judge incorporated the agreement by reference, found that the settlement was in the best interests of the infant plaintiff, and, citing the statute, ruled that the settlement did not "limit or prejudice the right of the plaintiff" to press his action against the other tort-feasors. Presumably, absent this reservation of rights, the judge would not have approved the settlement. It is

clear that the trial judge recognized that approval of the settlement would not prejudice the rights of the non-paying tort-feasors because the statute provided that the amount paid by the paying tort-feasors operates to "reduce the claim against the others."

Murphy argues that the 1980 and 1982 amendments to the statute show that in its original form the statute did not apply to releases. It is true that the 1980 amendment included releases with covenants not to sue and that the 1982 amendments maintained the distinction between the two. We agree that releases were not expressly included in the original statute. But, in our view, the effect of the statute as first enacted was to prevent a covenant not to sue, drawn in compliance with the statute, from having the effect, upon payment of the agreed consideration, of a release and accord and satisfaction barring recovery from the other joint tort-feasors. *Cf. Perdue* v. *Sears, Roebuck & Co.*, 694 F.2d 66 (4th Cir. 1982).

For the reasons assigned, we will reverse the final judgment and remand the case for trial on the merits.

*Reversed and remanded.*

RUSSELL, J., dissenting.

I have no disagreement with the majority's analysis of the development of the law respecting the effects of covenants not to sue. In 1979, the General Assembly clearly intended to abrogate the common-law rule that a covenant not to sue one joint tortfeasor, accompanied by an accord and satisfaction, operated to release all other tortfeasors. *Shortt* v. *Hudson Supply, etc., Co.*, 191 Va. 306, 60 S.E.2d 900 (1950). *See also Wright* v. *Orlowski*, 218 Va. 115, 120, 235 S.E.2d 349, 353 (1977).

As the majority opinion notes, however, the original 1979 form of the statute, which governs this case, affects only covenants not to sue. The statute was not broadened to include releases until 1980. A 1982 amendment made clear the legislative intent to affect only those releases executed after July 1, 1980. It is therefore crucial to the outcome of this case to determine whether the instrument before us, which was executed in October 1979, is actually a covenant not to sue. If it is, the statute saves it from the operation of the common-law rule; if it is not, the statute has no effect and the common-law rule operates to release all other

tortfeasors, regardless of the attempt by the parties to provide otherwise in the instrument. *Wright, id.* at 120, 235 S.E.2d at 353. The majority opinion fails to address this issue.

"[A] release is an immediate relinquishment or discharge of the covenantor's right of action, whereas a covenant not to sue is merely a promise not to prosecute a suit against the covenantee, and is enforceable only by the latter." *Shortt,* 191 Va. at 310, 60 S.E.2d at 903.

> With the enactment of the 1979 covenant law [Code § 8.01-35.1], Virginia was the only state to limit its settlements to covenants not to sue. Because of the past conservative tenor of the Virginia courts, it is safe to assume that any form of release signed between July 1, 1979 and June 30, 1980 will be interpreted as a release of all tortfeasors. The distinction between the two instruments rests on whether the phraseology indicates an abandonment of a claim or merely an agreement [not] to enforce an existing cause of action.

Comment, *The Covenant Not to Sue: Virginia's Effort to Bury the Common Law Rule Regarding the Release of Joint-Tortfeasors.* 14 U. Rich. L. Rev. 809, 815-16 (1980). The author of the foregoing comment also pointed out that the title of the instrument was not significant in determining its true nature. *Accord Perdue* v. *Sears, Roebuck & Co.,* 694 F.2d 66 (4th Cir. 1982).

When the instrument before us is examined in light of this distinction, it becomes apparent that it contains no language, other than its title, expressing a promise not to enforce the plaintiff's existing cause of action against the signatory defendants in the courts. Yet as we have seen, such a promise is the *sine qua non* of a covenant not to sue. Rather, the instrument expressly provides that upon payment of $43,500.00 "said payments shall discharge the said [defendants] from all liability to the plaintiff." Such a discharge of liability is the hallmark of a release, and the trial court correctly so construed the instrument before us.

Counsel in case 1683 clearly intended to bring the instrument within Code § 8.01-35.1 and were acting in good faith to avoid the application of the common-law rule. As we observed in *Wright,* that rule "sometimes works harsh results," but is "of ancient origin, honored without exception in this Commonwealth, and fully

familiar to bench and bar." 218 Va. at 122-23, 235 S.E.2d at 354. It was incumbent on the parties seeking the benefit of Code § 8.01-35.1 to draft the instrument so as to bring it within the terms of the statute. Being in derogation of the common law, the statute should be strictly construed and not enlarged in its operation beyond its express terms. *C. & O. Railway* v. *Kinzer*, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965). In my view, these parties joined the good company of counsel in a line of cases extending through *Shortt* and *Wright* back to *Ruble* v. *Turner*, 12 Va. (2 Hen. & M.) 38 (1808), who made similar unavailing efforts to release one defendant without releasing the others.

The majority has construed a release as a covenant not to sue, thus reaching the wrong result in this case. I therefore dissent and would affirm the judgment of the trial court.

COMPTON and THOMAS, JJ., join in dissent.