**John A. JONES, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION, Defendant–Appellee,**

v.

**Pamela Lynn BROWN, Third Party Defendant–Appellee.**

No. 87–2691.

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1988.

Decided Sept. 7, 1988.

Stephen Ray Pickard (Stephen R. Pickard, P.C., Alexandria, Va., on brief), for plaintiff-appellant.

John Foster Anderson (Charles S. Perry, McGuire, Woods, Battle & Boothe, McLean, Va., on brief), Gary Brooks Mims, Fairfax, Va., for defendants-appellees.

Before CHAPMAN, WILKINSON, and WILKINS, Circuit Judges.

WILKINSON, Circuit Judge:

John Jones was injured in an automobile accident with Pamela Brown on May 3, 1983. He subsequently settled with his and Brown's insurance companies and orally agreed to release Brown from any further liability arising from the accident. Because the release was not given in writing as required by Va.Code Ann. § 8.01–35.1 (1950) (1988 cum. supp.), that provision, which holds joint tort-feasors liable, is inapplicable. Since the release of Brown operates under common law to release all joint tort-feasors, including General Motors Corp., the manufacturer of Jones' automobile, we affirm the district court's grant of summary judgment in favor of General Motors and Brown.

I.

On May 3, 1983, John Jones was driving a 1983 Cadillac Fleetwood when it was struck in the rear by a pickup truck driven by Pamela Brown. Following the accident, Jones filed a claim against Brown's insurance carrier, State Farm Insurance Company. In March 1985, Jones received and accepted $50,000.00 from State Farm in compensation for his claim. Jones also filed a claim against his own insurer, Safeco Insurance Company, pursuant to the underinsured motorist clause in his policy. In April 1985, he received $45,000.00 from Safeco in satisfaction of this claim. In reaching this settlement Safeco relinquished its right of subrogation against Brown for the amount paid to Jones, and Jones agreed to consider his claim against Brown settled and to forego any further legal action against Brown in connection with the accident. There was apparently no writing memorializing the settlement and accord and satisfaction between Jones and Brown.

After settling his claim against Brown, Jones filed suit in Fairfax County, Virginia against General Motors, Potomac Leasing, and Moore Cadillac for breach of warranty and negligence, alleging that his injuries from the accident were exacerbated when the front seat of the Cadillac collapsed. Jones settled his claims against Potomac Leasing and Moore Cadillac on April 30, 1987. General Motors removed the case to federal court and filed a third party complaint against Brown.

On September 16, 1987, Jones executed a document releasing Brown from all claims arising from the May 3, 1983 accident and providing in part:

> Pursuant to Virginia Code Section 8.01–35.1 this Release is given in good faith by John A. Jones to Pamela Lynn Brown, and is not intended to discharge any other tort-feasors from liability, specifically, but not limited to General Motors Corporation.

The document recited, as consideration for the release, the $50,000.00 that Jones received from State Farm in 1985.

Brown and General Motors moved for summary judgment arguing that, under the common law, Brown and all joint tort-feasors were released from further liability to Jones as a result of the accord and satisfaction that he reached with Brown in March, 1985. The district court denied the summary judgment motions on October 30, 1987. On General Motors' and Brown's motions for reconsideration, the court concluded that the accord and satisfaction, while sufficient to release Brown from liability, was not executed in accordance with Virginia Code Ann. § 8.01–35.1 and therefore acted to release all joint tort-feasors. On November 20, 1987, the district court granted General Motors' and Brown's motions for summary judgment. From this order, Jones appeals.

### II.

Prior to 1979, Virginia courts "consistently applied the strict common law rule that a release of one tortfeasor releases all joint tortfeasors." *Wright v. Orlowski*, 218 Va. 115, 235 S.E.2d 349, 352 (1977); *see Shortt v. Hudson Supply & Equipment Co.*, 191 Va. 306, 60 S.E.2d 900, 903–04 (1950); *Ruble v. Turner*, 12 Va. (2 Hen. & M) 38, 43–44 (1808). In 1979, the Virginia legislature enacted Va.Code § 8.01–35.1 (1950) (1988 cum. supp.), which modified this common law rule. That section provides, in part:

A. When a release or a covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury, or the same property damage or the same wrongful death:

1. It shall not discharge any of the other tort-feasors from liability for the injury, property damage or wrongful death unless its terms so provide; but any amount recovered against the other tort-feasors or any one of them shall be reduced by any amount stipulated by the covenant or the release, or in the amount of the consideration paid for it, whichever is the greater.... A release or covenant not to sue given pursuant to this section shall not be admitted into evidence in the trial of the matter but

shall be considered by the court in determining the amount for which judgment shall be entered....

D. This section shall apply to all such covenants not to sue executed on or after July 1, 1979, and to all releases executed on or after July 1, 1980, regardless of the date the causes of action affected thereby accrued.

■ Releases which do not satisfy the requirements of the statute have the effect, according to the common law, of releasing all joint tort-feasors. *See Auer v. Kawasaki Motors Corp., U.S.A.*, 830 F.2d 535, 540 (4th Cir.1987); *Perdue v. Sears, Roebuck & Co.*, 694 F.2d 66, 67–68 (4th Cir.1982). The execution requirement of § 8.01–35.1 contemplates that the agreement be evidenced by a signed writing. In the instant case, the oral accord and satisfaction between Jones and Brown in March 1985, effectively released Brown from any further liability for the accident. *See, e.g., Auer*, 830 F.2d at 540. It was not, however, executed in compliance with § 8.01–35.1; therefore the release of Brown acted to release all joint tort-feasors.

Virginia courts have long adhered to the principle that statutes abrogating common law are to be strictly construed in light of their common law background and their operation is not to be expanded beyond their express terms. *Blake Constr. Co. v. Alley*, 233 Va. 31, 353 S.E.2d 724, 726 (1987); *Chesapeake & Ohio Ry. Co. v. Kinzer*, 206 Va. 175, 142 S.E.2d 514, 518 (1965); *Sydnor Pump & Well Co. v. Taylor*, 201 Va. 311, 110 S.E.2d 525, 529 (1959). This rule encourages a statutory construction which is narrower rather than broader. This circuit has adhered to the rule of strict construction with respect to the very statute at issue here, by refusing in *Perdue*, 694 F.2d at 68, to interpret the term "release" in the 1979 version of the statute to encompass a covenant not to sue. Similarly in *Auer*, 830 F.2d at 539–40, we held that an oral accord and satisfaction acted to release the party to whom it was given but was not a covenant not to sue exempted from the common law rule by the 1979

version of the statute. Although we are not addressing here the distinction between types of documents, the principle of interpreting the statute so as to limit the scope of displacement of the common law remains.

The district court's interpretation of the statute to require that some writing be executed is consistent not only with this canon of statutory construction but also with the plain language of § 8.01–35.1, which makes that provision applicable to "covenants not to sue *executed* on or after July 1, 1979, and to all releases *executed* on or after July 1, 1980." (emphasis added).

We recognize that "execute" is a word for all seasons and the definitions found in *Black's Law Dictionary* are all encompassing.[1] We must, however, view the term in the statutory context in which it appears. We are not talking here about "executing" a search warrant or the performance of an "executory" contract. Rather, the statutory language which speaks of executed releases and covenants appears to contemplate the signing of a written instrument. The drafters of the statute specifically selected the word "executed" in lieu of alternative terms such as "made" or "entered" which might have encompassed an oral agreement. (*See, e.g.,* Va.Code Ann. § 11–1 (1950) "Every contract, not in writing, made in respect to real estate or goods and chattels in consideration of marriage, or made in respect to real estate ...") This interpretation is further supported by other language in the statute which suggests that some written document was contemplated. For example, paragraph (A)(1) provides that the covenant or release does not discharge joint tort-feasors "unless its terms so provide," and that recovery against joint tort-feasors is reduced by "any amount stipulated by the covenant or the release." Further, releases or covenants "given pursuant to this section shall not be admitted into evidence," though they "shall be considered by the court" in determining the amount for which judg-

ment shall be entered. While none of this language standing alone might be dispositive, the provision as a whole points to the requirement of a writing.

The Virginia Supreme Court decision in *Hayman v. Patio Products, Inc.*, 226 Va. 482, 311 S.E.2d 752, 756 (1984), fortifies this interpretation. At issue in that case was an executed document entitled "Covenant Not To Sue." The Virginia court recognized that under the common law an accord and satisfaction would effect a release of all tort-feasors, but concluded that the statute as originally enacted applied to "covenant[s] not to sue, drafted in accordance with the statutory provisions." *Id.* The effect of the statute was to "prevent a covenant not to sue, drawn in compliance with the statute," from barring recovery from other joint tort-feasors. *Id.* This language suggests that the Virginia Supreme Court took the presence of an executed document as a given.

To so interpret § 8.01–35.1 is not to attribute to the Virginia legislature a purely formalistic act. The requirement of a writing ensures that the parties thereto understand who is being released in return for what consideration. It serves notice to joint tort-feasors that they remain bound and avoids the need to undertake extensive litigation over questions of the validity and effect of the release, with all the attendant problems of having the parties and their attorneys take the stand to testify about their understanding of the terms, consideration, and conditions of the release. Written documents reduce the likelihood of confusion as well as the chance that parties would collusively shape the terms of an earlier oral agreement to take advantage of the statute.

### III.

Finally, the district court did not err in finding that the subsequent written release executed on September 16, 1987 was invalid

---

1. *Black's Law Dictionary* 509 (5th ed. 1979) defines the word execute as follows:

     To complete; to make; to sign; to perform; to do; to follow out; to carry out according to its terms; to fulfill the command or purpose of. To perform all necessary formalities, as to make and sign a contract, or sign and deliver a note.

and not given in good faith. *See* Va.Code Ann. § 8.01–35.1 (1950) (1988 cum. supp.). This document was executed two and one-half years after the May 1985 accord and satisfaction between Jones and Brown, after the statute of limitations had expired on Jones' cause of action against Brown, and after the action against General Motors had been commenced and Brown joined as a third party defendant. This release therefore failed to bring this action within the scope of § 8.01–35.1 and Jones' recovery is limited to the amount he received from the two insurance companies and his out of court settlements with Potomac Leasing and Moore Cadillac.

For the foregoing reasons the judgment of the district court is

AFFIRMED.