**ALLIANZ INSURANCE COMPANY,**
Plaintiff,

v.

Denison D. **GARRETT,** Jr., Defendant.

Civ. A. No. 2:93cv830.

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 10, 1994.

Richard J. Cromwell, McGuire, Woods, Battle & Boothe, Norfolk, VA, for Allianz Ins. Co.

John G. Crandley and Lynn G. Smith, Preston, Wilson & Crandley, Virginia Beach, VA, for Denison D. Garrett, Jr.

## OPINION AND ORDER

PRINCE, United States Magistrate Judge.

Plaintiff, Allianz Insurance Company ("Allianz"), brought this action against defendant, Denison D. Garrett, Jr. ("Garrett"), seeking contribution, pursuant to Virginia Code § 8.01–34, for a settlement reached by Allianz's insured, John Whalen ("Whalen"), a claim to which Allianz is subrogated. Garrett filed a motion to dismiss for failure to state a claim for which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that the release of Whalen by the tort claimants does not release Garrett, and therefore, under Virginia Code § 8.01–35.1, neither Whalen nor Allianz may seek contribution. Allianz opposes the motion by asserting that the settlement of the claim by Allianz on behalf of Whalen did not involve a release, and § 8.01–35.1 therefore has no application. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332. Each party has filed supporting documents, so under Rule 12(b) the motion will be considered one for summary judgment.[1]

### Facts

The facts are not in dispute. As alleged, the claim is as follows: Whalen, a New Jersey resident, was driving his car on November 23, 1988, when it was involved in an accident in Virginia. Whalen's car collided with the rear of a tractor trailer, and immediately afterwards another car driven by Garrett, a citizen of Delaware, negligently collided with the rear of Whalen's car. Whalen's minor grandchildren were in his car, and they suffered injuries as a result of Garrett's negligence. The minors, through their guardian ad litem, later filed an action in a New Jersey state court against Whalen to recover damages as a result of Whalen's negligence in driving his car. Allianz settled that action on behalf of Whalen, and pursuant to New Jersey law an order was entered by the New Jersey court on May 6, 1993, approving the settlement. A copy of the settlement order is attached to the complaint. Allianz made demand upon Garrett and his insurer to contribute to the settlement, but they refused. Finally, Allianz alleges that its payment was for the injuries caused solely by Garrett's negligence or by the joint and concurrent negligence of Whalen and Garrett for which Garrett "is liable pursuant to Virginia Code § 8.01–34 for contribution of all or part of the settlement payment."[2]

---

1. The parties consented to have the case tried before a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

2. Garrett also moved to dismiss on the ground that the claim for all of the settlement is a claim for indemnity, but that no contract between Garrett and Whalen for indemnity has been alleged.

A claim for indemnity must necessarily grow out of a contractual relationship. See VEPCO v. Wilson, 221 Va. 979, 277 S.E.2d 149 (1981). Va. Code § 8.01–34 provides only for contribution, which may not exceed half of the amount paid. Nationwide Mut. Ins. Co. v. Minnifield, 213 Va. 797, 196 S.E.2d 75 (1973). Allianz does not advance a theory for indemnity, but a theory that

Garrett's motion to dismiss was initially argued on November 2, 1993. At the hearing Garrett's attorney offered as an exhibit what he represented to be a true and complete copy of the file of the New Jersey court that approved the settlement. Allianz's attorney accepted the representation and did not object to the exhibit. (Transcript of Hearing on Motion at 11). At the November 2nd hearing, Garrett's attorney partially based his argument on the court file and New Jersey statutory law and rules of court, which had not been mentioned in the Brief In Support Of Defendant's Motion To Dismiss Pursuant To Rule 12(b)(6). Nor did Garrett file any response to Allianz's Memorandum In Opposition To Motion To Dismiss. Therefore, Allianz's attorney[3] was surprised by the argument presented orally by Garrett's attorney, and the Court granted Allianz leave to file a response, which was filed on November 16th as Plaintiff's Memorandum In Response To Defendant's Oral Argument. On November 22nd, Garrett's attorney filed a letter reply to Allianz's response and attached a transcript of the settlement approval hearing in the New Jersey court. On January 6, 1994, Allianz filed a Supplemental Memorandum In Opposition To Motion To Dismiss, to which was attached a release dated December 15, 1993, on behalf of the minors by their guardian ad litem in favor of Whalen, Garrett, and others. The motion was further argued on January 11th, and neither party objected to the documents that had been filed since the initial hearing. Therefore, they will be considered as part of the facts, as the motion to dismiss is converted into a motion for summary judgment. Still, the subsequently filed exhibits leave the facts undisputed.

### Arguments

Allianz's claim for contribution is made under Virginia Code § 8.01–34. Garrett's defense is made under Virginia Code § 8.01–35.1. The former statute provides as follows:

"Contribution among wrongdoers may be enforced when the wrong results from negligence and involves no moral turpitude."

The pertinent parts of the latter statute provide as follows:

A. When a release ... is given in good faith to one of two or more persons liable in tort for the same injury ...:

1. It shall not discharge any of the other tort-feasors from liability for the injury ... unless its terms so provide; ... and

2. It shall discharge the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

B. A tort-feasor who enters into a release ... with a claimant is not entitled to recover by way of contribution from another tort-feasor whose liability for the injury ... is not extinguished by the release....

C. A release ... given pursuant to this section shall be subject to the provisions of [the statutes providing for the compromise and court approval of wrongful death claims and claims of minors].

D. This section shall apply to all ... releases executed on or after July 1, 1980. This section shall also apply to all ... oral releases agreed to on or after July 1, 1989, provided that any cause of action affected thereby accrues on or after July 1, 1989....

In substance, then, the last quoted statute provides that if a tort-claimant releases one of two tort-feasors without providing in the release for the discharge of the liability of the other tort-feasor, then the released tort-feasor may not claim contribution from the non-discharged tort-feasor.

Garrett contends that the settlement agreement reached in New Jersey between Whalen and his grandchildren effected a release of Whalen but not of himself, and therefore, his liability, if any, to the minor claimants is not extinguished; and being not extinguished, § 8.01–35.1B prevents Allianz from pursuing him for contribution.[4] Allianz

---

under federal law a court may apportion contribution among tort-feasors depending upon their respective share of the blame.

**3.** Not to mention the Court.

**4.** Allianz' attorney conceded at oral argument that the minors' guardian ad litem had no authority to execute the release of December 15, 1993, in favor of Garrett because there was no

counters by arguing that the settlement in New Jersey did not involve a release of Whalen, and § 8.01–35.1 therefore does not apply.

## Discussion

Garrett asserts, and Allianz appears to concede, that all issues in the case are controlled by Virginia law. If the court approved settlement in New Jersey between Whalen and his minor grandchildren, all of whom are citizens of New Jersey, is a release of Whalen by operation of law, as Garrett asserts, it is because New Jersey law makes it so. The underlying tort action is controlled by Virginia law, but that does not transmute the issue of whether the New Jersey settlement effected a release of Whalen into an issue of Virginia law. Neither is it made an issue under Virginia law because a subsequent issue—the right to contribution—is one of Virginia law.

In *Preine v. Freeman*, 112 F.Supp. 257 (E.D.Va.1953), plaintiffs, who were residents of New York, sued for injuries sustained in a Virginia automobile accident. Plaintiffs had settled with other joint tort-feasors, one executing a release in New York and the other in Colorado. The non-settling defendants moved for summary judgment based on the common law of Virginia rule that the release of one joint tort-feasor releases all. Plaintiffs countered that the laws of New York and Colorado where the releases were executed applied and not the law of Virginia. Judge Hutcheson held that the law of Virginia where the cause of action arose controlled the effect of the foreign releases.

In *White v. American Motors Sales Corp.*, 550 F.Supp. 1287 (W.D.Va.1982), *aff'd* by unpublished opinion, 714 F.2d 135 (4th Cir. 1983), plaintiff was injured in an automobile accident in North Carolina. She settled her claim with the driver of the other vehicle, and she executed a release in Virginia releasing him and all other persons, firms, or corporations from all claims. Then she filed separate suits against the manufacturer and distributor of her car, which she had bought in Virginia, based upon allegations of defective design and manufacture and breach of warranties. Judge Williams sustained motions for summary judgment and said:

> Based upon the *Preine* decision and the Virginia Supreme Court's continued reliance on traditional rules on conflicts of laws question[s], this court finds that the law followed by Virginia at this time is that effect of a release will be determined by the place of the wrong, North Carolina.

550 F.Supp. at 1289.[5]

Then, in *Rhea v. Horn–Keen Corp.*, 582 F.Supp. 687 (W.D.Va.1984), Judge Williams said that "[t]he general rules followed by Virginia are that the *lex loci delicti* determines the effect of a release and 'that the law of the place of the execution of the release governs the validity of the release.'" *Id.* at 689, quoting *White v. American Motors Sales Corp.*, 550 F.Supp. at 1289.

■ Applying these cases, the Court will determine whether the New Jersey accord and satisfaction created a release of Whalen under New Jersey law, and if it did, the effect of Whalen's release upon Allianz's right of contribution against Garrett under Virginia law.

The parties have cited no New Jersey authorities, and the Court has not found any New Jersey case directly in point. In 15A AM.JUR.2d, *Compromise and Settlement*, § 3, it is stated as follows:

> Although many types of novation and release do not involve compromise and settlement, a compromise or settlement will often have the same effects as a novation or release. If a compromise agreement is accepted as a substitution for and extinguishment of an antecedent claim, it may properly be called a substituted contract, or a novation. And if a compromise agree-

court approval, and that as a release of Garrett it has no validity. New Jersey law requires court approval of settlements of infants' claims. New Jersey Rule 4:44–3. The same is true in Virginia. Va.Code § 8.01–424.

5. In *Farish v. Courion Industries, Inc.*, 754 F.2d 1111, 1118 (4th Cir.1985), the court said "that under Virginia law, the law of the state where the injury occurs supplies the substantive law governing warranty claims. *See also White v. American Motors Sales Corp.*, 550 F.Supp. 1287 (W.D.Va.1982)."

ment or settlement involves the relinquishment of a claim and has the effect of discharging a party from being subjected to assertions of the claim in the future, such an arrangement is essentially a release. (Footnotes omitted.)

The same authority at § 20 states:

Where there is an unliquidated claim or a good-faith dispute concerning a claim and the party asserting the claim relinquishes it, or promises to relinquish it, as part of a compromise agreement, such a concession constitutes good consideration for a promise or act by the other party. The relinquishment of a claim may be express or implied and may be evidenced in many ways, for example, by ... discontinuance of a pending suit or a promise to do so. Although any of these methods may evidence the relinquishment of a claim and thereby have the effects of a release, the party relinquishing a claim may execute a formal release.

The case of *Savage v. Edgar*, 86 N.J.Eq. 205, 98 A. 407 (1916), involved an issue of whether a court of law or one of equity should entertain a defense of accord and satisfaction. There, a compromise of a claim was reached while an action was pending to recover a debt. The debtor agreed to give cash, a note, and some stock to his creditor in settlement of the claim. The debtor paid the cash, executed the note, and delivered the stock to the corporation's transfer agent as agreed. Later, the creditor contended that he did not have to accept the stock until he could determine its value. Not satisfied with its value, the creditor attempted to return the consideration to his debtor and resume prosecution of the action. In deciding the procedural issue, the court said:

The legal effect of the performance by [the debtor] of his agreement was to extinguish the [creditor's] claim that was made the basis of the action against [the debtor]....

The accord set up and executed by the [debtor] will afford a complete defense to the [creditor's] action at law, unless it should appear that the [creditor] was induced to sign a release (for such was the legal effect of the written agreement fully performed by the [debtor]), by false and fraudulent representations as to the value of the stock.

*Savage*, 98 A. at 408–409. Thus, it appears that New Jersey follows the generally prevailing common law of compromise and settlement espoused by *American Jurisprudence* and quoted above. Therefore, in the case at bar, the effect of the court approved infants' settlement was a release of Whalen even though the court's order nowhere uses the word "release". In any event, there is no reason suggested why the release of Whalen executed on December 15, 1993, seven months after the court approval of the settlement, was not valid as to him in New Jersey even if it gave him no more than he received in the accord and satisfaction approved by the court.

The same result would be reached under Virginia law. In *Wright v. Orlowski*, 218 Va. 115, 235 S.E.2d 349 (1977), decided when the common law rule that "the release of one releases all" prevailed, plaintiff executed settlement agreements with insurers of two tort-feasors containing covenants not to sue the insurers and stating that the agreements were not "a release or discharge of nor an accord or satisfaction with any person whomsoever." These agreements were reached while the action was pending against the insureds and several other tort-feasors. Plaintiff reserved the right to proceed against the insured tort-feasors and any other joint tort-feasors. There were side agreements between the insureds and the insurers whereby the insureds released the insurers from any further obligations. Plaintiff's counsel and the two insured tort-feasors also reached a tacit agreement that a nonsuit would be taken as to the two insured tort-feasors before the case went to the jury. The remaining defendants moved for dismissal on the ground that the agreements between plaintiff and the insurers, between the insureds and the insurers, and the tacit agreement between plaintiff's counsel and the insureds were releases of them. Citing the long history of the common law rule in Virginia, the court said:

It is a *release* which actuates the rule. The making of an *accord* and the acceptance of *satisfaction* will effect a release.

When a tortfeasee accepts satisfaction from one tortfeasor *for the part he played* in the joint tort, that tortfeasor is released and his release operates to release all other tortfeasors.

235 S.E.2d at 120. It was the tacit agreement with the insureds that supplied the consideration between plaintiff and the insureds for the accord and satisfaction. The court continued:

> Accord having been made, acceptance by plaintiff[ ] of the satisfaction tendered in consideration of [his] covenant not to sue and [his] commitment to nonsuit constituted releases of [the insured defendants]. "The satisfaction of the claim by the wrongdoer, and not the form of the instrument executed by the plaintiff, extinguished the claim of the latter." ... We hold that when plaintiff[ ] accepted the payments fixed in the tripartite contracts, satisfaction for the tortious conduct of [insured defendants] was accepted, plaintiff['s] cause of action was extinguished, and the other tort feasors were released.

235 S.E.2d at 122 (citation omitted). Therefore, under Virginia law, if it applied to the effect of the accord and satisfaction reached in New Jersey, the result would be the same as the result under New Jersey law, i.e., the accord and satisfaction made in New Jersey effected a release of Whalen.

■ Garrett, then, argues that because Whalen was released and he, Garrett, was not, Virginia Code § 8.01–35.1 precludes Allianz from seeking contribution from him. Allianz, arguing to the contrary, submits that § 8.01–35.1 does not apply because Whalen's release was by operation of law, brought about by the effect of the accord and satisfaction, and not in accordance with § 8.01–35.1. Allianz relies upon *Jones v. General Motors Corp.*, 856 F.2d 22 (4th Cir.1988). Jones was injured in an accident on May 3, 1983, as a result of the negligence of Brown. He filed a claim against Brown's insurer and they reached a settlement in March 1985. He also filed a claim against his own insurer

pursuant to the underinsured motorist provision of his own policy. This claim was settled in April 1985. In this settlement, Jones' insurer agreed to relinquish its subrogation claim against Brown, and Jones agreed to consider his claim against Brown settled. There was no writing memorializing the settlement and the accord and satisfaction between Jones and Brown. Later, Jones filed an action against General Motors alleging that his injuries in the accident were exacerbated when the front seat of his car collapsed in the accident. Still later, more than two years following the settlement with Brown's insurer, Jones executed a release of all claims against Brown in consideration of that settlement. The release stated that it was not intended to release any other tort-feasors, specifically naming General Motors. General Motors filed a motion for summary judgment asserting that under the common law in Virginia the accord and satisfaction reached with Brown in March 1985 released him and all other tort-feasors. The trial court sustained the motion on the ground that the accord and satisfaction reached in March 1985 was not executed in accordance with § 8.01–35.1, and therefore the common law applied.

The Fourth Circuit affirmed, holding that the statute contemplates that the settlement agreement be evidenced by a signed writing, that the oral accord and satisfaction between Jones and Brown in March 1985 effectively released him, but because it was not in writing as required by the statute, the common law applied and acted to release all other tort-feasors.[6] The court also upheld the finding of the district court that the written release of Brown executed by Jones more than two years after the accord and satisfaction was not given in good faith, because it was executed after the statute of limitations had expired and after the cause of action against General Motors had been filed.

At the next session of the General Assembly of Virginia following the *Jones* decision,

---

**6.** The Supreme Court of Virginia decided in 1987, in a case similar to *Jones v. General Motors Corp.*, that the application of the common law joint tort-feasors rule does not depend upon the relationship of the tort-feasors. That is, it does not matter that they are not joint tort-feasors strictly speaking. What does matter is that the plaintiff is entitled to but one satisfaction for the same injury. *See Cauthorn v. British Leyland, U.K., Ltd.*, 233 Va. 202, 355 S.E.2d 306 (1987).

§ 8.01–35.1 was amended to add, in part, the following:

> This section shall also apply to all ... oral releases agreed to on or after July 1, 1989, provided that any cause of action affected thereby accrues on or after July 1, 1989.

The affect of this amendment will be discussed later.

The approval of the infants' settlement in the present case was evidenced by an order of the New Jersey court. Pursuant to New Jersey rules of court, after the approval of the settlement judgments were entered against Whalen in favor of each infant. When the judgments were satisfied, the accord and satisfaction was accomplished. Thus, the Whalen release was effected as a result of that accord and satisfaction by operation of New Jersey law. Applying the rule of conflicts of law stated earlier, Virginia law will determine the effect of that release upon Allianz's right of contribution from Garrett.[7]

While the accord and satisfaction was sufficient to release Whalen from further liability, the accord and satisfaction was not executed in accordance with the terms of Virginia Code § 8.01–35.1 prior to the 1989 amendment, when its terms applied only to written releases. In *Jones v. General Motors Corp.,* 856 F.2d 22, 24 (4th Cir.1988), the court held that "the execution requirement of § 8.01–35.1 contemplates that the agreement be evidenced by a signed writing." The release is the agreement which must be evidenced by a signed writing. The release in *Jones* was not in writing, so the court held that § 8.01–35.1 did not apply, but that the common law did. The release of Whalen was not in writing. It was by operation of law. The settlement between Whalen and his grandchildren was approved by the court and a written order was entered, and the judgments entered against him following the approval of the settlement were in writing. Those writings, however, can not be equated with the writing required by Va.Code § 8.01.35.1. The Virgi-

nia statute begins as follows: "A. When a release ... is given in good faith to one or more persons liable in tort for the same injury ...: 1. It shall not discharge any of the other tort-feasors from liability for the injury ... unless its terms so provide." There simply is no writing evidencing the release of Whalen, nor were the settlement approval and judgment orders entered in New Jersey the writings contemplated by the Virginia statute. To hold otherwise would render meaningless the reasoning of the Fourth Circuit in *Jones,* which said:

> The requirement of a writing insures that the parties thereto understand who is being released in return for what consideration. It serves notice to joint tort-feasors that they remain bound and avoids the need to undertake extensive litigation over questions of the validity and effect of the release, with all the attendant problems of having the parties and their attorneys take the stand to testify about their understanding of the terms, consideration, and conditions of the release. Written documents reduce the likelihood of confusion as well as the chance that parties would collusively shape the terms of an earlier oral agreement to take advantage of the statute.

856 F.2d 22, 25. It would seem to follow that because the release of Whalen was not achieved in contemplation of or pursuant to § 8.01–35.1, the common law of Virginia prevails, and that the release of Whalen effected the release of Garrett, and he no longer faces any claims against him by the minor children growing out of the accident. Furthermore, it would seem that Allianz is free to pursue its claim for contribution against Garrett.

■ There are two final questions to be considered, however, before reaching a decision. Does § 8.01–35.1 reach a release created by operation of law, and what bearing does the 1989 amendment to the statute have on the case? To be recalled is that following

---

7. If this issue was decided under New Jersey law it would appear that the release of Whalen did not cause the release of Garrett. In *Esdaile v. Hartsfield,* 245 N.J.Super. 591, 586 A.2d 334, 337 (Ct.App.Div.1991), judgment rev'd on other grounds, 126 N.J. 426, 599 A.2d 1254 (1992), the

court said: " '[T]he scope of a RELEASE is determined by the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances.' " Quoting *Bilotti v. Accurate Forming Corporation,* 39 N.J. 184, 188 A.2d 24 (1963).

the decision in *Jones* holding that the statute contemplated a signed writing, the Virginia General Assembly amended the statute to provide in part: "This section shall also apply to all oral ... releases agreed to on or after July 1, 1989, provided that any cause of action affected thereby accrues on or after July 1, 1989." Strictly speaking, Whalen's release was not oral but by operation of law. In *Wright v. Orlowski*, 235 S.E.2d 349 (Va. 1977), the release was by operation of law also. There, the court held that the making of an accord and the acceptance of satisfaction will effect a release, which releases all tort-feasors. The court said that "this is a rule of law, the operation of which the tort-feasee cannot defeat by a unilateral reservation of rights." *Id.* at 353. The General Assembly intended to change this law when it enacted § 8.01–35.1 in 1979. *See Hayman v. Patio Products, Inc.*, 226 Va. 482, 311 S.E.2d 752 (1984). In *Jones*, the release was not by operation of law. The court said that "Jones agreed to consider his claim against Brown settled and to forego any further legal action against Brown, [but t]here was apparently no writing memorializing [it]." 856 F.2d 22, 23. The General Assembly apparently intended to change this when it amended § 8.01–35.1, in 1989.[8] The sum and substance of this history is to reveal that under the common law a release of one joint tort-feasor by operation of law was as effective in releasing all joint tort-feasors as was a written release of just one tort-feasor, even though the release-giver intended not to release others; and that the 1979 statute abrogating that common law did not apply to oral releases, but does now after the 1989 amendment. The 1979 statute was aimed at validating covenants not to sue.[9] It was accomplished by validating *written* covenants not to sue, and later *written* releases, and later still *oral* covenants not to sue and *oral* releases.

For the reasons stated earlier in this opinion, the release of Whalen was not a written release covered by § 8.01–35.1. The Whalen release was by operation of law—the reaching of an accord and the acceptance of satisfaction—but it was based upon an oral agreement. The plaintiffs were 10 and 8 years old at the time the agreement was reached. Transcript of Motion [For Court Approval], Monmouth County, New Jersey, Superior Court, April 27, 1993, at 4. Of necessity, the agreement was reached through their mother, acting as guardian ad litem for them. She was represented by counsel. The purpose of the hearing on the motion was stated by the court as follows:

> It is my understanding, and I'll ask [plaintiffs' attorney and defendant's attorney] to confirm it, that the cases involving the infant plaintiffs *is settled* subject to Court approval.... Is that correct?

Transcript at 3 (emphasis added). Each attorney answered, "That's correct, Your Honor." During the questioning of the parents by the court, each answered that it was understood that in the event medical expenses were incurred in the future for the treatment of the injuries sustained by the children in the accident no one acting for them could ask a court in either New Jersey or Virginia for additional money. Transcript at 7–8, 16. It was also asked of each parent by the court if they were asking the court to approve the settlement. Each responded affirmatively. Transcript at 12, 18.

The purpose of the hearing on the motion before the New Jersey court was to obtain approval of the oral settlement reached. Part of that settlement was an agreement that no further claims could be asserted against Whalen. After New Jersey procedures were followed, the guardian ad litem accepted satisfaction of the accord. The release of Whalen was thus effected by operation of law, but it was founded on the oral agreement.[10] Although the Supreme Court

---

8. Unlike, e.g., the 1991 amendment to Va.Code § 8.01–244, where the General Assembly enacted that "the provisions of this act are declaratory of the original intent of the General Assembly," the 1989 amendment of § 8.01–35.1, to make it apply to oral releases had no such similar declaration.

9. In 1980, the statute was amended to include releases as well as covenants not to sue.

10. In *Cauthorn v. British Leyland, U.K., Ltd.*, 355 S.E.2d 306 (Va.1987), there was a court approval of an infant settlement, and the settlement order provided for the release of the settling tort-feasor. There was no discussion of whether that

of Virginia has not decided precisely this issue, and recognizing that "Virginia courts have long adhered to the principle that statutes in derogation of common law are to be strictly construed in light of their common law background and their operation is not to be extended beyond their express terms" (*Jones v. General Motors Corp.*, 856 F.2d at 24), this Court believes that the Supreme Court of Virginia would hold that the Whalen release was an oral release under the statute, if the 1989 amendment validating an oral release applies to it.

The automobile accident in this case occurred in 1988. Whalen was released in 1993, when the accord and satisfaction was completed. The statute bringing oral releases within its provisions applies "providing that any cause of action affected thereby accrues on or after July 1, 1989." The infants' causes of action against Whalen and Garrett accrued in 1988. Whalen's cause of action against Garrett for contribution also accrued in 1988, even though his right to proceed against Garrett—his remedy—arose when settlement of the infants' claims was made and paid in 1993. In *Shiflet v. Eller*, 228 Va. 115, 319 S.E.2d 750 (1984), plaintiff[11] was injured in an accident in 1977 as a result of the negligence of two joint tort-feasors. He filed one action against both in 1979. In 1981, while the case was pending, plaintiff settled with one of the tort-feasors and executed a document labelled "Release or Covenant Not To Sue Agreement Pursuant to Virginia Code Section 8.01–35.1, As Amended." In the document, the settling tort-feasor was discharged from liability, but plaintiff reserved all claims against the non-settling tort-feasor. The latter then filed a plea of release, which the trial court sustained. The Supreme Court of Virginia affirmed, holding that the date of the accident determined the rights of the parties under the statute. The court explained its holding as follows:

[T]he right to recover contribution "arises only when one tort-feasor has paid or settled a claim for which other wrongdoers are also liable," . . . while the cause of action for contribution arises at the time of the jointly negligent acts. . . . This cause of action is a substantive right manifested by the ability of one tort-feasor to seek contribution from another wrongdoer jointly liable and by the ability of a joint wrongdoer to defend successfully a suit by the plaintiff after the plaintiff has released another joint tort-feasor.

Because the cause of action for contribution accruing to [the non-settling] joint tort-feasor[ ] arose at the time of the jointly negligent acts in [ ] 1977, it necessarily follows that the 1979 statute in question, which adversely affects that substantive right, cannot be applied retroactively to impair that right. . . .

[W]e hold that the trial court correctly determined that issues affecting the substantive right of contribution are to be determined by the law which existed at the time of the tort giving rise to the cause of action for contribution . . . and properly decided that Code § 8.01–35.1 affects substantive rights of joint tortfeasors, not merely the procedural aspects of their remedy.

319 S.E.2d 750, 754–755. One of the rights the court recognized that the non-settling tort-feasor had was not to have a judgment entered against him in an amount which would cause him to pay more than the settling tort-feasor from whom he could not seek contribution. Therefore, the substantive rights of the joint tort-feasors to contribution are determined at the time of their negligent conduct, and § 8.01–35.1 affects those substantive rights.

The joint negligence of Whalen and Garrett[12] occurred in 1988, and their substantive rights *viz-a-viz* contribution arose then. In 1988, § 8.01–35.1, as interpreted, provided

release was a written signed document or one created by operation of law. Of course, *Cauthorn* was decided before *Jones v. General Motors Corp., supra,* held that a signed written release was required under the statute.

**11.** There were actually two plaintiffs.

**12.** Throughout this opinion it has been assumed that Garrett was negligent. Of course, nothing the Court has said in this regard may be construed as a finding that he was negligent.

that if one joint tort-feasor was released from liability by the claimant the other tort-feasor was not released if a *signed written* release so provided. In that event the released tort-feasor would not be entitled to contribution from the non-released tort-feasor. If, though, with the substantive rights of the joint tort-feasors so established, one settled with the claimant and obtained an *oral* release, as Whalen did, the release, while valid insofar as the settling tort-feasor is concerned, would not be in contemplation of the statute, and the statute would not apply. Instead, the common law that a release of one joint tort-feasor releases all joint tort-feasors would apply. In the absence of § 8.01–35.1, the controlling statute is Va. Code § 8.01–34, which permits contribution between joint tort-feasors.

Accordingly, Whalen has a valid release from his grandchildren; the release operates in Virginia as a release of Garrett; and Allianz has a subrogated right of contribution against Garrett. Garrett is not in jeopardy of owing contribution to Whalen *and* of being liable to the children for a judgment for which he would be precluded from seeking contribution from Whalen.[13] The only potential liability Garrett now faces is Allianz's contribution claim.

 Allianz's argument for allocation of contribution based upon the amount of fault attributable to Whalen and Garrett is based upon *Franklin Stainless Corporation v. Marlo Transport Corporation,* 748 F.2d 865 (4th Cir.1984). That case is inapplicable, because it dealt with federal contribution based upon the joint negligence of a shipper and a common carrier, a relationship regulated by the Interstate Commerce Commission. Allianz's claim is based upon Virginia Code § 8.01–34, and under that statute, joint tort-feasors bear the burden equally. *See Nationwide Mut. Ins. Co. v. Minnifield,* 213 Va. 797, 196 S.E.2d 75 (1973). Therefore, Allianz's claim for contribution is limited to

one-half of what it paid in settlement of the judgment against its insured, Whalen.

## ORDER

For the reasons stated, it is ORDERED that the motion to dismiss, which the Court treats as a motion for summary judgment, is DENIED. It is FURTHER ORDERED that defendant's motion for partial summary judgment by limiting Allianz's claim for contribution to one-half of the amount of the judgments against Whalen is GRANTED.

---

13. Insofar as it is relevant to any issue decided, the Court FINDS that for the purpose of Va.Code § 8.01–35.1, the written release of Whalen, Garrett and others executed by the guardian ad litem on December 15, 1993, was not given in good faith. Under New Jersey law, the guardian had

no right or authority to release Garrett—under New Jersey law, the release of Whalen by operation of law probably was not a release of Garrett—and the release was obtained on behalf of Allianz after the issue arose in the case of whether Garrett had been released from liability.